## DE PEYSTER, appellant, and M. CLARKSON, Jun., and others, respondents.

It is the duty of trustees and guardians to keep the money belonging to the trust estate properly invested.

If they neglect to make investments, they are chargeable with the interest of the unemployed funds, commencing six months after the receipt of the monies.

A trustee is not permitted to put the income of an estate into his own pocket, to be accounted for at the termination of the trust, and in the meantime appropriate the capital to the payment of the annual expenses of the trust. The *interest* or *income* should first be applied and exhausted in the support of the *cestuis que trust,* if infants, and to answer the other exigencies of the trust, before the principal is encroached upon.

Where annual disbursements are required, and they are equal to the whole income of an estate, and the trustee is charged with interest on the income used by him and not invested, he will have to pay the interest as it falls due; but if the disbursements or investments that he makes are less than the income, then he will not be required to pay the interest which he may owe as it falls due, but it will be carried into the disbursement fund, which bears no interest. This rule therefore does not allow compound interest.

Where, for a period of 20 years, a large balance amounting on an average to a sum exceeding $5000, was annually left in the hands of executors and guardians, who after the first seven years made no investments whatever of the monies remaining on hand, but the same were used by one of the executors as his own, against whom a bill to account was filed, the following directions were given to the master in stating the account, and the decree of the chancellor containing such directions, on appeal to the court of errors, was *affirmed,* viz. : The master "is directed so to state the account as that the defendant shall be charged with interest on the annual balances and on two certain bonds, one given by the defendant, and the other by one S. H., (for which the defendant had become responsible,) but also on all monies received by him during each year, from the end of six months after the day of the receipt thereof to the end of the year, deducting therefrom, except as hereinafter mentioned, the interest on all payments, of what nature or kind soever, from the respective dates thereof to the end of the year; and that the interest which shall appear at the end of every year

# CASES IN THE COURT OF ERRORS

during the period of such account, to be due from the defendant, be applied towards satisfying, in the first instance, as far as the same shall extend, and before resorting to the principal, any payments, including expenditures and investments thereafter made by the defendant, to or on account of the complainants, or their estate, but so, nevertheless, as not, in any case, to compute interest on interest; and to that end, the master is hereby directed to carry into the said account the interest annually accruing on the said two bonds, on the first day of January in each year, until the principal was paid. And the said master is further directed, during the first year of the said account, commencing on the first day of January, 1803, to compute interest on the respective receipts and payments by the defendant during the year, to the end thereof, and strike the balance of such interest, and carry the same into the column of simple interest, to be added to or deducted from the interest to be computed on the yearly balance of the principal monies, as the case may be; and such amount of interest at the end of the year 1803, shall be deemed the fund out of which payments are made during the ensuing year or years, until the same is exhausted, and so from year to year until the termination of the account, except that no interest after the year 1803 is to be credited on payments made by the defendant, until such fund of interest as aforesaid shall first have been exhausted; but as to any excess of payments, interest is to be computed thereon; and in case it shall so happen, that at the expiration of any year, the balance of interest shall be found in favor of the defendant, then the same shall be applied towards diminishing the principal monies then due to the complainants, or the said estate.

Where money is paid into the court of chancery by order of the court, on a balance admitted to be due, and the same is paid to the credit of the cause generally, and not in extinguishment or satisfaction of so much of the complainant's demand, and such money is invested in public stocks, on which a loss subsequently happens, the loss must be borne by the defendant and not by the complainants, especially if the complainants were willing to receive the money as a payment on account, and such appropriation was objected to by the defendant.

APPEAL from chancery. Charles Clarkson died in October, 1802, leaving a widow, and a daughter and two sons, his only children and heirs at law, the eldest of whom was not six years of age. On the day of his death, he made and published his last will and testament, whereby, after directing all his just debts and funeral charges to be paid, and giving to a sister a legacy of £500, he nominated and appointed Frederick De Peyster, Matthew Clarkson, sen. and Freeman Clarkson executors of his will, without making any farther disposition of his estate and effects. He died seized of a large real and personal estate. On the 19th October, 1802, the executors made and filed a renunciation in the surro-

gate's office in favor of the widow and children of the testa- ~AL BANY,~ tor's residuary personal estate, after the payment of the debts and legacy. Frederick De Peyster and Freeman Clarkson, two of the executors, proved the will, and took upon themselves its execution. In December, 1802, the widow of Charles Clarkson also died, leaving a valuable real and personal estate, without other issue than the children above named. In the same month, Frederick De Peyster and Freeman Clarkson were appointed by the surrogate of Kings county guardians of the persons and estates of the infants, and became possessed of the real and personal property belonging to them, and received the rents and profits. On the 14th November, 1810, Freeman Clarkson, one of the executors and guardians, died, and shortly afterwards, his executors settled the accounts of his executorship and guardianship with Frederick De Peyster, and paid to him the balance found due on such settlement. In the month of August, 1822, the youngest son of Charles Clarkson attained the age of 21, when De Peyster, the surviving executor and guardian, was called on by the heirs for an account, &c. Not agreeing as to the liabilities of the executor, a bill in chancery was filed by Matthew Clarkson, jun., who had intermarried with the daughter, and by his wife, and by the two sons, David F. and John Clarkson, against Frederick De Peyster and Matthew Clarkson, the third executor, who was made a nominal party.

From the answer of the defendant, it appeared that from January, 1803, until January, 1823, a large balance, amounting, on an average, to a sum exceeding $5000, was annually left in the hands of the executors and guardians, and that after the death of Freeman Clarkson, one of the executors, no investments whatever were made of the monies so remaining on hand, but the same were used by the defendant, who stated in his answer, that knowing his own responsibility to be ample, and that there could be no danger of the loss of the monies, he deemed it more convenient, and, at least, equally safe, to keep them in his own hands; that he made no specific appropriation of them different from the use of his monies generally; and he averred he always intended to allow *simple interest* on them on a settlement with the heirs.

ALBANY,
Dec. 1828.

De Peyster
v.
Clarkson.

It further appeared, that the defendant De Peyster, in his accounts rendered to his co-guardian, had charged the estate with the price of 36 shares of the stock of the Manhattan Company, as purchased by way of investment, although the same had not, in fact, been purchased, and that he had sold out one hundred shares of the stock of the same company, and seventy of the Merchants' Bank, which he held as guardian. He averred a readiness to make an investment to the amount of the 36 shares of stock, and to account for the dividends which would have been payable thereon, or else to account for the price, with interest, from the time of its charge ; and as to the 100 shares of Manhattan stock and 70 Merchants' bank shares, he offered either to re-place the shares, or to account for the actual proceeds of the sales, with interest, as the court might direct.　Previous to the cause being brought to a hearing, the defendant, on the application of the complainants, was directed by the chancellor to re-place and transfer these stocks, (1 *Hopkins*, 274,) which was accordingly done.

After the cause was heard on the pleadings and proofs, an account was taken by a master, who reported a balance in favor of the complainants of $12,289 44 ; to which report the complainants excepted, but the defendant acquiesced. Before the exceptions were brought to argument, the complainants applied for an order without prejudice to their exceptions, that the balance reported by the master be paid over to them or brought into court.　The order was granted that the sum reported, with the interest thereof, be brought into court, and invested *to the credit of the cause.*　The money was brought in and invested in the public funds, and by a subsequent order, on the application of the complainants, the defendant was directed to pay to the complainants the amount thus brought into court, or, in default thereof, the assistant register was required to sell the stocks in which the same had been invested, and to pay the amount reported to the complainants.　The defendant paid the amount deposited to the complainants, and presented his petition to the chancellor, stating that the stock in which the money deposited had been invested had been sold by the assistant register at a loss of

$1180 76, and praying that so much might be paid into court by the complainants, to abide the further order of the court. The petition was opposed by the complainants, on the grounds: that they were desirous to receive the money, instead of having the same paid into court; but that the defendant refused to pay it to them, unless they received the same in full satisfaction, and abandoned their exceptions; and that they advised the investment of the funds in stock of a particular kind, which, if complied with, would have yielded a profit, instead of producing a loss, but that the defendant refused to consent to any arrangement. The petition was denied.

The decree under which the account was taken, and the report of the master made, which was excepted to, was pronounced by the late Chancellor SANFORD. In this decree, (the reasons for which may be seen in 1 *Hopkins,* 505,) it was, amongst other things, ordered, " That the master do charge the defendant with simple interest on the balances of monies, if any, remaining from time to time in his hands, since the death of Charles Clarkson, (excepting such monies as have been used and employed by the said defendant, upon which profits have been made,) by computing the same for each year on the yearly balances remaining as aforesaid in his hands, and carrying such interest for each year into a separate column." The master, in pursuance of this order, in stating the account, charged the defendant with simple interest on the balances remaining in his hands from year to year, and with the simple interest of two certain bonds, (one executed by the defendant himself, in 1803, for $2500, and the other by one Hake, in 1811, for $2000, for which the defendant had become responsible,) and credited him with all payments made by him on account of the estate, and with his commissions as follows, viz. the half of one per cent. upon all monies received up to the time of Freeman Clarkson's death, and one per cent. upon all monies received since, and after making all just allowances, certified a balance against the defendant of $12,289 44.

The complainants presented exceptions to this report, amongst which were the following: That the master had allowed all payments and expenditures to go entirely towards

the reduction of the *principal* monies, from time to time in the defendant's hands, whereas such payments and expenditures ought in the first place to have been applied towards *the interest* due at the respective times when such payments and expenditures were made ; that the master had charged the defendant with *simple* instead of *compound* interest on the bonds mentioned in the report ; and that he had allowed the defendant commissions, &c.   The exceptions were overruled, except in one particular not here noticed, and the report of the master confirmed with that exception, upon which the complainants entered an appeal to the court of errors ; but a new chancellor (the Hon. SAMUEL JONES) having shortly afterwards been appointed, the appeal was discontinued, and a re-hearing applied for in the court of chancery, which was granted.   On the 30th March, 1827, the cause having been re-heard, Chancellor JONES made an order referring back the report of the master, and directing, amongst other things, that in re-stating the account, the master should so re-state the same, " as that the said defendant shall be charged with interest, not only on the annual balances, and on the two bonds mentioned in the said report, the one given by the defendant, the other by Samuel Hake, but also on all monies received by him during each year, from the dates of such receipts respectively, to the end of the year, deducting therefrom, except as hereinafter mentioned, the interest on all payments, of what nature or kind soever, from the respective dates thereof to the end of the year ; and that the interest which shall appear at the end of any year during the period of said account to be due from the defendant, be applied towards satisfying, in the first instance, as far as the same shall extend, and before resorting to the principal, any payments, including expenditures and investments thereafter made by the defendant, to or on account of the complainants, or their estate, but so nevertheless as not in any case to compute interest on interest ; and to that end the master is hereby directed to carry into the said account the interest annually accruing on the said two bonds, on the 1st day of January in each year, until the principal was paid.   And the said master is farther directed, during the first year of the said

account, commencing on the 1st day of January, 1803, to compute interest on the respective receipts and payments by the defendant during the year, to the end thereof, and strike the balance of such interest, and carry the same into the column of simple interest, to be added to or deducted from the interest to be computed on the yearly balance of the principal monies, as the case may be; and such amount of interest, at the end of the year 1803, shall be deemed the fund out of which payments are made during the ensuing year or years, until the same is exhausted; and so from year to year until the termination of the account, except that no interest after the year 1803 is to be credited on payments made by the defendant, until such fund of interest as aforesaid shall first have been exhausted; but as to any excess of payments, interest is to be computed thereon; and in case it shall so happen that at the expiration of any year, the balance of interest shall be found in favor of the defendant, then the same shall be applied towards diminishing the principal monies then due to the complainants, or the said estate. And in re-stating said account, the payment of $13,814 12, made under the order of the court since the date of the master's report aforesaid, (and any other payments, if any, made under the order of the court not already credited the defendant,) is to be allowed the defendant, and the receipts and payments heretofore allowed by the master are to be deemed proved.

The parties accordingly attended before the master, who, on the 1st May, 1827, reported that he had re-stated the accounts as directed by the last order, and that over and above the previous payments, there was a balance still due to the complainants, amounting on that day to $12,544, to wit, $10,296 98 for *principal*, and $2,241 02 for *interest*. To this report exceptions were taken on both sides, none of which were allowed. The opinion delivered by Chancellor JONES was as follows: (This opinion not being as yet published in the *Chancery Reports*, so that it can be referred to, is unavoidably inserted here.)

THE CHANCELLOR. Exceptions were taken by both parties to the master's second report in this cause.

ALBANY,<br>Dec. 1828.<br><br>De Peyster<br>v.<br>Clarkson.

The principal exceptions were taken on the part of the defendant, and consisted of five.

The *first* was an exception to certain specified sums charged to the defendant. On the argument, this exception was confined to the sum of $289 03, under date of 23d March, 1811, which was supposed by the defendant to be a sum paid by Mr. De Peyster to Clarkson, his co-guardian, and for which he claimed to be entitled to credit.

This exception is founded on a misconception of the fact. On turning to the account, it is obvious that the amount in question was composed of monies received by Clarkson ; and in the account of Clarkson with the estate, it appears to its proper credit, and it is not brought into the account of Mr. De Peyster with Clarkson, or with the estate. The account of the co-guardian was settled, and the balance paid over to De Peyster, and with that balance only he is charged. The master was right, therefore, in not crediting the sum in question to Mr. De Peyster.

The *second* exception relates to the claim of commissions. On the argument, this exception was said to involve the question of the right of the defendant to full commissions on his receipts during the lifetime of his co-executor and guardian, the objection being, that the master had allowed half only, when the defendant was entitled to full commissions. If the master had allowed the defendant half commissions, on his own receipts and payments, and none upon those of his co-executor, the rule would have been liable to exception ; but I do not discover the application of that principle. The half commission during the lifetime of F. Clarkson, appears to be charged on all the receipts and payments of both guardians in the same manner that the whole commission is allowed subsequently to the death of F. Clarkson. If this be not so, then it ought to be made so ; but beyond that the defendant has no rightful claim. It is true that a larger commission was charged by F. Clarkson than is now allowed to the defendant ; but that charge gives no right to the defendant. Neither of the guardians was, during the lifetime of F. Clarkson, entitled, as the rule then stood, to any commission. Their services were gratuitous ; and it is only under

the late statute that any allowance can be made. The allowance authorized by this statute must be in conformity to the rate established under it. In strictness, the estate of F. Clarkson is not entitled to any other allowance than that given by the statute. But his account has been settled, and a mercantile commission allowed him. The surviving guardian has credit, therefore, in his settlement, for the amount thus paid to or retained by his co-guardian, in order to protect him from the consequence of an advance which might otherwise be considered as a misapplication of the money of the estate. In that way, the deceased guardian obtains full mercantile commissions; but the surviving guardian coming now to account under the direction of the court, must conform to the rate established under the statute, and can claim no more than half commissions during the life of the co-guardian, and whole commissions after his death, according to the statute rate. If such commissions have been allowed him, he has no cause of complaint; and I see no reason for supposing that this allowance has been curtailed.

The *third* exception is, that interest has been computed on each sum received from the date of the receipt, and the balance of interest, at the end of each year, applied as a disbursement fund, out of which subsequent payments are to be made until exhausted, without any allowance of interest upon the sums disbursed and paid; and it [is objected to this mode of accounting, that the effect of it will be to charge the defendant with compound interest.

The terms of the direction as expressed in the order are, that, in re-stating the account, the defendant shall be charged with interest " on all monies received by him during each year, from the dates of such receipts respectively to the end of the year; deducting therefrom, except as hereinafter mentioned, the interest on all payments, of what nature or kind soever, from the respective dates thereof to the end of the year; and that the interest which shall appear at the end of any year during the period of said account to be due from the defendant, be applied towards satisfying, in the first instance, as far as the same shall extend, and before resorting to the principal, any payments, including expenditures and

investments thereafter made by the defendant, to or on account of the complainants, or their estate, but so nevertheless as not in any case to compute interest on interest ; and to that end, the master is hereby directed to carry into the said account the interest annually accruing on the said two bonds, on the 1st day of January in each year, until the principal was paid. And the said master is farther directed, during the first year of the said account, commencing on the 1st day of January, 1803, to compute interest on the respective receipts and payments by the defendant during the year, to the end thereof, and strike the balance of such interest, and carry the same into the column of simple interest, to be added to or deducted from the interest to be computed on the yearly balance of the principal monies, as the case may be ; and such amount of interest, at the end of the year 1803, shall be deemed the fund out of which payments are made during the ensuing year or years, until the same is exhausted ; and so from year to year until the termination of the account, except that no interest after the year 1803 is to be credited on payments made by the defendant, until such fund of interest as aforesaid shall first have been exhausted ; but as to any excess of payments, interest is to be computed thereon ; and in case it shall so happen, that at the expiration of any year the balance of interest shall be found in favor of the defendant, then the same shall be applied towards diminishing the principal monies then due to the complainants, or the said estate."

Does this method of accounting bear the impress of the principle of compound interest ? or must its practical results necessarily be to charge the defendant with interest upon interest ? As I understand the direction, the principle of the rule it prescribes for the interest account is undeniably just ; for it is simply this, that the interest or income of the estate shall first be applied and exhausted in the support of the children, and to answer the other exigencies of the trust, before the principal is encroached upon for those purposes.

Now if the capital was invested, and producing interest, could an objection be raised to the rule, which should require and enjoin upon the guardian the application of the

ALBANY,
Dec. 1828.

De Peyster
v.
Clarkson.

accruing interest to the current expenditures of the family? Could it be pretended that the expenditures should be provided for by sales or collections of the capital, and the interest or income be left in the hands of the administrator? or would the administror be justified in such a course of administration? Then, can it vary the rule, that the administrator retained and used the funds instead of investing them? The owners of the estate were entitled to the benefit of the funds and of the produce of them, whether invested or retained and used by the administrators; and if they are chargeable with interest on uninvested money, that interest belonged to the estate, was applicable to the payment of the disbursements and expenditures, and ought to be so applied in the first instance.

This is the leading principle of the former decision in this cause;[*] and further reflection has confirmed me in the correctness of it. I cannot reconcile it with my views of equity as betweeen the administrator and the parties in distribution, or the guardian and ward, that the administrator or guardian shall be permitted to retain the money belonging to the estate he has in charge, and either apply it to his own use, or causelessly suffer it to lie idle and exhaust the capital, or other resources of the estate, in the expenditures or payments required by the exigencies of the trust. It is the duty of trustees and guardians to keep the monies belonging to the trust estate properly invested. Circumstances may justify a deviation from that duty, and those circumstances may be so strong as to require the trustee, in the exercise of sound discretion, to refrain from making investments; but those circumstances rarely occur; and when they do, the trustee is bound to state them to the court as the reasons for his otherwise culpable neglect. Ordinarily, the duty of the trustee must predominate, and he is bound, within a reasonable time to be allowed him for the purpose, to see that the monies which come to his hands in the course of his agency, are securely and beneficially invested for the benefit of those for whom he acts; and if that duty be neglected, he must be

---

[*] The decision, pronounced by the Chancellor, (Jones,) in March, 1827, modifying the decree of Chancellor Sanford.

ALBANY,
Dec. 1828.

De Peyster
v.
Clarkson.

made chargeable with the interest of the unemployed funds, unless satisfactory cause be shown for the omission to invest them.

The master acted, therefore, upon the principle af the order of reference in charging the surviving guardian in this case with the interest of all the uninvested monies of this estate which had been retained by him in his own hands ; and indeed, in this case, the defendant himself admits, in his answer, that he was accountable for interest on those monies, and always intended to allow it.   He did right to make the avowal ; it was a candid expression of an honest conviction of a just liability ; and on that ingenuous admission, if no other cause had existed, he must have been charged with interest.

But the objection is not to the charge of interest, but to the mode of charging it, by carrying it into the current account, as so much money in the hands of the guardian, and immediately applicable to his disbursements and payments for the account of his wards.   How can it be cause of objection or complaint to the guardian, that interest money which he acknowledges himself bound to pay, should be appropriated to the maintenance of his wards ?   The minor children had a right to the income of the estate for their support.   Interest becomes due annually, if not oftener ; and it surely cannot be unjust or severe upon a trustee who uses the trust monies, to carry that interest to a disbursement fund, to be applied, as occasion may require, to meet the exigencies of the trust.   If, from any justifiable cause, the guardian or trustee keeps the monies of his ward unemployed, he will, by showing the fact, excuse himself from the charge of interest ; and the court is never astute in the reasons it requires for this prudential course of the trustee, and never imposes on him the necessity of investment or employment of the funds where he would incur personal danger, or the fund would be put at great hazard by parting with it.   But on the other hand, reasonable cause must appear for suffering the fund to remain idle, or the trustee will be chargeable with interest for it on the ground of neglect of his duty to invest.   Where no investment is made, and no sufficient reason is given for the omission, the charge is a matter of course.

In this case, for the reasons already given, the guardian was chargeable with interest on the funds retained by him; and in the former, as well as the present account, that charge appears. At the end of each year, then, the interest of those monies, for that year, became due to the estate; and, together with the receipts of rents and dividends of stocks within the year, if not required for the exigencies of the wards or the estate during the year, properly made an item of charge against the guardian, and became immediately applicable to future disbursements and payments, as the same should be required.

But it is objected that the interest is charged on the receipts within the year, from the times of the receipts to the end of the year. That mode of stating the account was directed by the order. It is not confined to receipts, but is applied equally to payments within the year. It was a direction given by the request of the accounting party, for the purpose of allowing him the full benefit of payments made within the year, and when the receipts of the year might not be sufficient to meet the payments. It was descending more into minutia, and calculating more closely than exactly accorded with my own views, which would have been better consulted by allowing no interest on monies received until six months after the time of the receipt, nor on payments, as long as any balance of the interest fund, and the previous receipts within the year, were sufficient to meet them. But as there was nothing wrong in the principle of the method proposed, I yielded to the application of the parties in granting it. That direction does not form a just ground of complaint by either of the parties, as it was assented to by both. Indeed, the objection did not appear to be much pressed. The *gravamen* was supposed to be, that the method of stating the account, in its general operation, produces the effect of an allowance of compound interest.

If by compound interest is meant the charge of interest upon monies which become due for interest, by carrying such monies into the account as items of principal, and computing interest upon them, which is the sense I attach to the terms, the method of accounting directed by this order, and pursued

by the master, is not, either in principle or its practical operation, a system for compounding the interest. When the disbursements are equal in amount to the whole income of the estate, the trustee or guardian is obliged to pay the entire interest, as it becomes due, in the expenditures and disbursements he makes for the estate, and the parties interested in that estate, of course, reap all the benefit of a punctual payment of interest; and consequently, in case of investments of interest, will have the benefit of the revenue, or interest, which may afterwards accrue from what may be so invested. But in no other way does this mode of accounting for interest, and of appropriating the fund it forms, partake of the character, or produce the consequences of compound interest. To the full extent, that by such method of accounting the interest of trust monies as it becomes due, or after it is due, whether payable by the trustees or by strangers, is applied to the current expenses of the trust, and to necessary investments in the first instance, and before the capital is allowed to be touched, is too obviously just to admit of a question; and, however nearly it may approach to the operation of compound interest, and even if it produced the same effect, the accounting party cannot complain of it, without asserting the preposterous claim to the right of applying the principal of his wards' estate to the current demands of the trust, and leaving, at the same time, an arrear of interest owing by himself to the trust estate unpaid, and to remain in his hands during the minority of the wards, unavailing to them, but in ease and favor of himself.

A statement was offered by the defendant's counsel, to show the operation of the principle directed by the order of reference to be applied to this account; and that statement was said to show, that a capital of $15,307 82, on that principle, produces an accumulation of $36,055 79 in eight years, and consequently, more than doubles itself in that period.

It would be strange, indeed, that such should be the result of the rule, which simply directs, that in taking the account, the interest shall be first applied to the payment of the disbursements. No interest can, in any form, be charged, under that direction, upon any arrear of interest. The accru-

ALBANY,
Dec. 1828.

De Peyster
v.
Clarkson.

ing interest never becomes, in any shape, a new capital, carrying interest, unless that accruing interest be actually invested in stocks or loans which produce interest, and which would then yield to the trustee or guardian the fruit which he reaps for his wards. If his expenditures and investments for his wards absorb the whole of the current interest on the funds, he merely pays them the interest he owes them, but is not charged with any interest on the sums thus expended or invested. At the utmost, therefore, he could not be chargeable, by such an operation, with more than payment punctually of the interest as it fell due, in the shape of expenditures and investments ; and, whenever those expenditures and investments do not exhaust the interest, the arrearages stand as a stationary fund, applicable to such payments, when they shall afterwards be made, but without carrying interest in the mean time.

If the rule had been carried to the extent of requiring the guardian to invest the interest money, not otherwise disbursed by him, as the same became due from him, and he became chargeable therewith, and the order had directed that all unexpended interest monies should be deemed to be invested and be charged, and carry interest as principal sums, there would have been a foundation for assimilating the method of accounting, on such principles, to the rule of compound interest. But this order gives no such direction. On the contrary, it forbids the charge of any arrear or balance of interest to the defendant, as an item of principal, or the allowance of interest upon any such arrear or balance of interest, and directs such surplus, if any, at the end of each year, to be carried into an account, denominated the disbursement account, which is to be applied to disbursements and payments, but not to draw interest ; and that mode of accounting can never produce a balance at any given period of time, however remote, which shall exceed the aggregate amount of principal sums, with lawful interest, after deducting the disbursements and payments of the accounting party. There must be some fallacy, then, in a statement which produces such a different result.

By that statement, the balance stated by Master Bolton in his first report to be due for principal on the first of January, 1815, is assumed and taken to be the whole principal sum then due from the defendant, and his subsequent payments are placed against that principal sum and the interest then due upon the items composing it. Thus, by that report, the balance of principal on the first of January, 1815, including the defendant's bond, and the bond of Hake, appeared to be $15,307 82, and the items of interest carried into the column of interest in the account at that time, according to this report, amounted to $3,345 61, making, with the interest on the bonds of the defendant and Hake to that time, in the whole, $21,284 26; and the subsequent parts of the same report show disbursements of principal moneys from January, 1815, to January, 1823, to the amount of $9,-930 21; and the defendant paid during that interval, under the orders of the court, the two sums of $5,743 90, on the 8th of September, 1823, and $13,814 12, on the 19th of November, 1825; and a further balance is now found against him of $12,544, making, in all, the enormous sum of $42,-032 23; so that, after deducting the arrears of interest, there would be $36,055 79, for which the defendant would be accountable, apparently arising from a capital of only $15,307 82.

A brief analysis of this statement will show its fallacy.

The first error is in the assumption of $15,307 82, including the two bonds, as the principal sum in the hands of the defendant on the first day of January, 1815.

The first report of Master Bolton, it is true, does show that balance on that day; but it must be borne in mind, that the first report was made on the principle which has been discarded by the court, and by which the annual interests were carried into an interest column, to be left and remain untouched to the close of the account at the termination of the guardianship, and all the disbursements of the guardian were to be taken out of the capital. This rule of accounting had been applied in stating the account, from its commencement in October, 1802, to January, 1815, a period of about twelve years, and had reduced the capital or principal sums belong-

ALBANY,
Dec. 1828.

De Peyster
v.
Clarkson.

ing to the estate, by the annual deductions from it of all the disbursements and payments of the guardian, which the rents and dividends proved deficient to provide for and satisfy, while the interest of the capital was lying dead in the hands of the guardian, and formed an unavailable item in the account.

The rule directed by the second order to be applied in stating the account, produced very different results, by making the accruing interest an active and available fund for disbursements and payments. It rescues the capital from the moth that was consuming it, and re-places in the account the defalcation it had suffered from the previous method of accounting, and by which its apparent reduction had been occasioned.

To test the operation of the method of accounting prescribed by the second order, and to contrast its bearings upon the account with those of the rule previously applied to the first account—if we begin with the first of January, 1815, we must take the balances of principal and interest due on that day according to the present report. These balances are,

| | |
|---|---|
| Of principal, | $16,391 30 |
| To which add the two bonds, | 4,500 00 |
| | $20,891 30 |

And of interest or disbursement fund, $1,388 25
Thus showing a difference of full $5,500 of principal between the two accounts at the first stage or commencement of the computation.

Again; the statement submitted by the counsel assumes that the two sums paid under the orders of the court were taken out of the capital, or, at least, out of the capital and arrears of interest due on the 1st of January, 1815, for no other means of making the payments are mentioned in that statement; and yet it is apparent, on the face of the statement, that after deducting the disbursements between January, 1815, and January, 1823, there stated at $9,930 21, the whole balance of principal and interest of the account on the 1st of January, 1815, was inadequate to those two pay-

ments. But it will be seen that no notice is taken in that statement of the interest on the bonds of the defendant and Hake, and on the balances of principal subsequently to the 1st day of January, 1815, which, according to the first report of Mr. Bolton, amounted together to upwards of $10,-000. It was this interest, out of which, on the principles of the first account, much the larger portion of the sums paid under the orders of the court were taken. Thus it appears by the master's first report, that of the amount paid under the order of September 8th, 1823, the sum of $3,081 44 was taken from the arrears of interest on the two bonds, $162 50 from the rent account, and $2,500 from principal, being the amount of the defendant's bond for that sum, and that the sum of $13,814 12 paid on the 19th of November, 1825, consisted entirely of interest, with the exception of the Hake bond for $2,000, and $581 in dividends received on stocks in 1823. By the first report of the master, then, stating the account upon the principles then applied, the payments made by the defendant subsequently to January 1st, 1815, are, for disbursements, $9,930 21 ; and under the two orders, $19,-558, together $29,488 23. And the means of making those payments were, the balance of principal on the 1st of January, 1815, including the two bonds, $15,307 82 ; the arrears of interest then due, $3,345 56 ; subsequent interest, including arrears on the bonds, about $11,000 ; stock dividends and rent in 1823, $743 56 ; together $30,396 88 : being more than the payments—so that the sum claimed to be now due is the difference between the two modes of stating the account ; and an inspection of the account, as now stated, will show, that the difference of the balances is the result of the fair application of the rule charging simple interest only, and applying that interest, in the first instance, to the payment of the disbursements incident to the trust, and the investments of the guardians. And this exposition of the principles of the account will rescue it from the imputation of severity and oppression, and satisfy every rational mind that it does no more than render justice to the complainants, without injury to the accounting party.

The fourth and fifth exceptions are, that interest is continued on principal sums after the same were paid. This ex-

ception proceeds on the assumption that the first account was correctly stated, and that the principal monies were exhausted by the disbursements of the guardian for his wards ; but I have already declared that mode of stating the account to be founded in error.

The account has been re-stated, and the mistake rectified. The accounts, as now presented, show that a large balance of principal monies remained in the hands of the guardian when those payments were directed. There was a balance of interest in arrear at the time of the first payment, and that balance was applicable, in the first instance, to that payment. On looking at the schedule annexed to the master's report, it appears that those payments are credited to disbursement account, and, after exhausting it, the balance goes to reduce the amount of capital; and that was, I think, the proper mode of stating the account. I see no ground of objection in that respect, and the exceptions must be disallowed.

The two exceptions taken on the part of the complainants relate to the charge of commissions. The master has allowed the defendant commissions on the entire amount of receipts and payments resulting from the account as now stated; and I think he was right in making that allowance. The guardian is entitled to his commission on his whole receipts and disbursements ; and if the account is computed on erroneous principles, and a less balance is thereby produced than he is justly chargeable with, and his commission is proportionably reduced, there can be no reason why the correction of that error should not correct the error in the commissions also. The erroneous charge of commissions grew out of the first mistake, and must be rectified with it. There was no direction necessary. The principles of justice required, and the master did right to exercise the power as incident to the principal direction, to re-state the account.

But he has allowed commissions on the annual balances. This resulted from the annual statements ; and as the account is considered as settled annually, the commission must be regarded as earned and due at the end of each year. It is for the benefit of the wards to have these annual rests, and the accounting party is entitled to have his compensation al-

lowed him on the same principle. It is no objection to this allowance, that the operation is to allow the guardian interest on his commissions ; for that operation is produced by every allowance and payment on both sides, from the moment that an effective credit is given. Nor do I attach any importance to the objection, that commissions, by this method of accounting, are allowed for services performed, before the passage of the act authorizing them. That effect is produced by any mode of stating the account. I consider it as sanctioned and established by the case of *Benson* v. *M'Whorter.* The principle appears to me to be reasonable and just, and I approve of the decision. The legislature authorized the allowance on the ground that it was a meritorious charge, and it is equally so, whether the service was rendered before or after the act ; and the principle is the same, whether it is allowed at the end of each year, or at the close of the account.

These exceptions are therefore overruled. (*a*)

(*a*) The following is the statement of the defendant's counsel referred to in the foregoing opinion :

1. The stocks have been re-placed and transferred under the order of the 8th September, 1823. They, of course, are not taken into account.

The whole principal in the defendant's hands on the 1st January, 1815, which was the date of the largest balance, as appears by Mr. Bolton's first report, was                                                        $10,807 82
To this is to be added the defendant's own bond,                  2,500 00
And Samuel Hake's bond,                                           2,000 00

   Whole principal,                                              $15,307 82
He has paid as follows:
1. The balance of principal, by Mr. Bolton's first
   report, on the 1st January, 1813, was          $    877 61
Deducted from the                                   10,807 82

                                                   $9,930 21
2. Under the order of 8th September, 1823,           5,743 90
3. Do. November, 19, 1825,                          13,814 12

                                                   $29,488 23
Add to this the additional interest now computed,   12,544 00
                                                              $42,032 23
Deduct from this the simple interest due January
   1, 1815,                                         $3,345 56
Do. then due on the bond of 2,500                    2,070 88
Do. on Hake's bond, 2,000,                             560 00
                                                                5,976 44

                                                              $36,055 79

Subsequently the defendant presented to the chancellor a petition for a re-hearing, on the ground that the master was directed by the decretal order of 30th March, 1827, to allow interest on the monies received by the defendant from *the times of the receipt* of the same, without any time being allowed for investing the same; whereupon the chancellor made the following order: " That if the complainants shall consent to deduct from the amount now reported due, the difference between that amount or balance and the amount or balance which shall result from and be produced by so varying the account as to charge interest on the sums received from the end of six months after the day of the receipt thereof, as stated in the account, up to the end of the year wherein the interest shall on that principle begin to run, and by farther varying the said account so as to allow or credit no interest on any disbursement or payment by the said defendant, except in cases, if any, where such disbursement or payment shall exceed the money then in the hands of the said defendant; and in such cases, on the excess only of such disbursement, and payment over and above the money then in the hands of the said defendant, such assent to be signified by the application of the complainant's solicitor to the master to ascertain such difference or deduction so to be made, and such difference or deduction to be ascertained by the master by a computation to be by him forthwith made, no notice being necessary, then and in such case the application for a re-hearing is denied, and the costs of this application, and of the master in making the computation hereby directed, and the costs and charges incident thereon, to be paid by the said defendant, Frederick De Peyster; but if the complainant shall not assent to such deduction, then the application for a re-hearing shall be granted, on the payment by the defendant, Frederick De Peyster, of the costs of the said application."

The complainants assented to this order, and the master, on reference to him, reported that the difference produced

The result is, that the principal of $15,307 82 in 8 years, produces an accumulation of $36,055 79, that is, considerably more than doubles itself in that time,

by varying the account in . conformity to the order last mentioned was $834 26, which, deducted from the balance stated in his former report, left the sum of $11,709 74 due from the defendant ; upon the coming in of which report, the chancellor made his *final* decree, that the defendant pay to the complainants the sum of $11,709 74, with interest from the 1st May, 1827, and the costs of suit to be taxed, and that the complainants have execution, &c. The defendant *appealed.*

*J. Duer,* for appellant, disclaimed the intention to controvert the principle that the balances remaining on hand from year to year, and not the principal, should have been applied by the executor to the disbursements necessary for the infants and their estate, but contended that the account had been improperly stated under the principle settled by the decree. The main question is, has the executor been guilty of such neglect of duty as ought to subject him to punishment? He has always been willing to allow an interest of seven per cent. on balances remaining in his hands, but has objected ·to pay *compound interest* which was demanded by the respondents, and which, as the appellant insists, has been allowed by the master. Although the decree disclaims the intention of ·allowing compound interest, the result is the same. A mode of calculation producing the same result as compound interest is equally objectionable, whether called by one name or another ; and by the mode of calculation adopted, the excutor is subjected to a balance even greater than what compound interest would produce.

Laxity and rigor in applying the principles of law defining the duties and liabilities of executors, ought both to be avoided, as said by Chancellor SANFORD, in his opinion pronounced in this case : " A jealous severity, which would deter prudent men from accepting these trusts, and a lax indulgence which would invite men to accept them for gain, are extremes which are equally inexpedient."

In the case of *Schieffelin* v. *Stewart,* (1 *Johns. Ch. R.* 620,) Chancellor Kent allowed *compound interest* in the stating of an account against an executor, on the ground that the trust money had been used by him. The reasoning in that case

embraces the circumstances of this ; and as that decision has ever since been considered as establishing the law here, it becomes important to inquire whether it is supported by authority.

In 2 *Atk.* 106, it is said that the executor has a right to use the money of the estate ; and in the same book, page 603, it is observed that no case had occurred in which an executor had been holden liable for interest. The reason was, that the executor was responsible for the trust fund, if lost, though invested with the greatest prudence. Not long after, it was holden that it was his duty to make investments ; and out of this change of principle as to the duties of executors, sprung the doctrine of liability to pay interest. No traces of this doctrine, however, can be found until the time of Lord Thurlow. In 1 *Brown's R.* 360, is found the first case subjecting the executor to the payment of interest. He had mixed the testator's money with his own, and applied it in the course of trade. The only question, however, was, whether *interest* should be allowed, and not whether the executor should be charged with *compound interest*. Rests were made, but they were necessary to ascertain balances, and not for the purpose of charging compound interest, as inferred by Chancellor Kent. Lord Eldon, in 11 *Vesey*, 92, says, "From the direction of rests, it is not to be inferred that compound interest will be allowed." In 1 *Brown's R.* 375, the liability of the executor to pay interest is placed upon the ground that he had applied the funds to his own use, and had made profits. In the case of *Treves* v. *Townshend*, (1 *Brown*, 384, reported more fully in 1 *Cox's Cases*, 51,) an assignee of a bankrupt, who had neglected to pay over the money of the estate, was decreed to pay 5 per cent., though 4 per cent. was the usual interest of the court. The counsel also cited 2 *Brown's R.* 430, 2 *Cox*, 113, *S. C.*, 3 *Brown*, 73, 107, 4 *Vesey*, jun., 620, 101, 5 *Vesey*, jun., 800, 11 *Vesey*, 61, 581, to shew that no more than 5 per cent. interest was allowed against an executor, although he had used the trust funds. *Raphael* v. *Boehm*, (11 *Vesey*, 92,) is the only case to be found in which *compound interest* was allowed against an executor. The decree was made by Lord Eldon. It was af-

terwards reviewed by Lord Erskine, (13 *Vesey*, 407,) and subsequently again by Lord Eldon, (13 *Vesey*, 590.) It was founded on the peculiar circumstances of the case. The will of the testator directing that the money which should be received from time to time should be invested, and that the executor should make no profits from the estate, the executor assumed the trust under these special directions, and the decision was based upon the terms of the will, and not upon the general rule of law. The case of *Raphael* v. *Boehm* has not only been shaken, but overruled by other decisions. Whilst that cause was yet pending, and subsequent to the first decree, the case of *Ashburnham* v. *Thompson*, (13 *Vesey*, 402,) was decided, in which the trust was the same ; but compound interest was not even asked for, much less allowed. The case in 12 *Vesey*, 127, cited by Ch. Kent, does not support the decision in *Raphael* v. *Boehm*. The case of *Tabbs* v. *Carpenter*, (1 *Maddock's R.* 297,) supports the position that the executor is liable only to simple, and not compound interest, where he has made no profits from the estate. There the direction in the will was the same as in *Raphael* v. *Boehm*, and yet the executor was charged only with simple interest. The rule in England now is, where the executor *neglects to invest*, he is charged with 4 per cent., and where he *uses* the money, with 5 per cent. ; but in no case does he pay compound interest. Both chancellors concur in acquitting the defendant of a fraudulent breach of trust. He is chargeable, therefore, only with a neglect of duty ; and, according to the rule established in England, would be liable only to *equitable*, and not to *legal* interest. In the abstract, the rule of compound interest appears just and reasonable. Theoretically, it applies to every case and appears unanswerable ; but practically, it is refuted. It proceeds upon false premises, supposing punctual payments and immediate investments.

The account ought not to have commenced until after the death of Freeman Clarkson, the co-executor and co-guardian. His accounting is not called in question, nor are his representatives made parties. The account, therefore, ought to have commenced in 1811, and not in 1802. Besides, for the first and second years, the executors had the right to

retain in their hands the monies of the estate to meet the necessary advances, disbursements and contingent demands, although the probable income of the estate might be supposed adequate to the necessary expenditures. Previous to 1811, an allowance of interest was made by the executors of what they deemed just; and as the representatives of the deceased executor have not been made parties, and the fairness and correctness of Freeman Clarkson's conduct is admitted, there is no reason in charging the defendant in relation to the estate previous to 1811, and the complainants are precluded from opening the accounts previous to that time.

It was wrong to charge the defendant with the loss sustained by the sale of the stock. The defendant had been compelled to pay the money into court on the application of the complainants, and they ought to have been charged with the loss.

*J. I. Roosevelt, jun.*, for respondents. The defendant must abide by the loss on the stock sold. The complainants offered to accept the money instead of having it invested, and advised to an investment, which would have yielded a profit ; but this advice was rejected. Why then should they be held responsible for the loss? Besides, the defendant cannot be heard on this point, not having appealed within 15 days, the time limited for appeal from interlocutory orders.

A trustee who neglects to invest the trust monies, and uses them for his own benefit, is chargeable with interest, the same as if he had put out the money on loan, and actually received the interest. The counsel insisted that the defendant had subjected himself not only to the charge of neglect of duty, but to that of gross delinquency, and commented upon various circumstances in support of his allegation. He urged that the defendant had refused to produce his book of accounts, from which the profits he had made might have appeared; and that by the law, as settled both in England and this country, where a trustee uses the trust fund, and refuses to shew the profits, he is liable to the charge of *compound interest.* The direction in the will in the case of *Raphael* v. *Boehm*, to invest the monies, and in which case the exec-

ALBANY,
Dec. 1828.

De Peyster
v.
Clarkson.

utor was decreed to pay *compound interest*, imposed no great-- er obligation of vigilance than the defendant in this case was under, standing in the double relation of executor and guardian to the infants. In *Dornford* v. *Dornford*, (12 *Vesey*, 127,) compound interest was allowed, which case was decided before the final decree in *Raphael* v. *Boehm*. In *Scheiffelin* v. *Stewart*, (1 *Johns. Ch. R.* 620,) Chancellor Kent goes the whole length, and unanswerably shews that in a case like this the executor is chargeable with compound interest. Whatever vascillation may have taken place in *England* on this question, the case in 4 *Dow's Parliamentary R.* 109, restores the law as pronounced in 11 *Vesey*, 92. The counsel also cited 4 *Vesey*, 620 ; 5 *Vesey*, 794 ; 1 *Cox*, 50 ; 11 *Vesey*, 581 ; and 1 *Jacobs & Walker*, 122.

The mode of calculation directed by Chancellor Jones, is more favorable to the defendant than if semi-annual *rests* had been ordered, as was done in the case of *Raphael* v. *Boehm*. The defendant cannot object to the account being carried back to the commencement of the executorship, notwithstanding the death of Freeman Clarkson, as the same result is produced, whether the account is taken according to his view of the case, or as stated by the master. Although the complainants are entitled to compound interest, they do not ask it. They only ask that the interest, when received, shall be applied from time to time to the necessary disbursements, and that on what remains on hand without investment six months after its receipt, the defendant shall be charged with interest. The mode of crediting payments as between debtor and creditor, is to carry them in the first place to the extinguishment of the *interest* due, (2 *Johns. Ch. R.* 209, 2 *Comyn's Dig.* 669,) so as to leave the *principal* untouched ; the reason of which rule applies with increased force to the case of a trustee, that he shall apply the *income* of an estate to necessary disbursements, instead of charging them against the *capital fund*.

*S. A. Talcott*, (attorney general,) in reply. The principle of computation upon which the account is stated, gives the complainants, for a period of more than seven years, more

than *compound interest.* Of this the defendant complains. He has always been willing to pay simple interest on the monies remaining in his hands, but objects to be charged with a rate of interest greater than that. The utmost that can be required of trustees is, that they shall manage the estate entrusted to them, with ordinary prudence and vigilance ; and as even with the utmost attention a man cannot at all times put out money on loan, and receive his interest punctually at the end of the year, it is unreasonable that a trustee who retains money in his hands, should be held chargeable with more than simple interest.

The case in 4 *Dow,* 109, does not overrule the case in *Maddock.* That was a case between principal and agent, in which it had been agreed by the parties that the account should be kept with annual rests. In *Dow,* 131, the general rule is laid down, that if a trustee mixes the money of the trust estate with his own, he shall pay *legal,* but not *compound* interest.

SUTHERLAND, Justice of the Supreme Court. The appellant, Frederick De Peyster, is one of the executors of Charles Clarkson, who died in the month of October, 1802, leaving a large, real and personal estate. In December following, Elizabeth, the widow of Charles Clarkson, also died intestate, leaving real and personal property to a considerable amount. They had three children, one a daughter named Catharine E., (who afterwards married Matthew Clarkson, jun.,) and two sons, David F. and John Clarkson, to whom, with the exception of some trifling legacies, all the property of the father was given by his will, and who were the heirs at law of the mother. The eldest of these children was less than six years of age when the father died. The youngest of the children having, in the month of August, 1822, attained the age of 21 years, application was made to the appellant, on their behalf, for a settlement of his account, as executor and guardian to the children ; but the parties differing as to the principles on which the account was to be stated, the respondents, who are the children of Charles Clarkson, filed their bill in this cause. Freeman Clarkson

was a co-executor and co-guardian with the appellant until November, 1810, when he died. His executors soon after settled his account in relation to his estate with the appellant, the surviving executor, and paid over to him the balance due. From that period, the appellant has had the exclusive management and control of the estate.

It is admitted, that since the death of Freeman Clarkson, the appellant has invested none of the monies belonging to the estate, but that they have been mingled with and used in the same manner as his own. It is also admitted that the balance in his hands belonging to the estate has, from 1803 to the filing of the bill, been large, varying from two to ten thousand dollars of principal. The question is, whether he is to be charged with interest upon the balances from time to time in his hands, and in what manner and upon what principle it is to be computed and applied in the statement of the account.

The directions given by the order of the chancellor to the master were, that the defendant should be charged with interest on all monies received by him during each year, from the date of such receipt respectively to the end of the year, deducting therefrom (except as afterwards mentioned) the interest on all payments of what nature or kind soever, from the respective dates thereof to the end of the year; and that the interest which should appear at the end of any year during the period of the account to be due from the defendant, should be applied towards satisfying, in the first instance, as far as the same should extend, and before resorting to the principal, any payments, including expenditures and investments thereafter made by the defendant, to or on account of the complainants, or their estate, but so, nevertheless, as not, in any case, to compute interest upon interest; and to that end, the master was directed to carry into the account the interest annually accruing on two certain bonds, the one from the defendant to the estate, and the other from one Hake to the estate, for which the defendant had made himself responsible, on the 1st day of January in each year, until the principal was paid. And the master was further directed, during the first year of the account, commencing on the

1st of January, 1803, to compute interest on the respective receipts and payments by the defendant, during the year, to the end thereof, and strike the balance of such interest, and carry the same into the column of simple interest, to be added to or deducted from the interest to be computed on the yearly balance of the principal monies, as the case might be ; and such amount of interest, at the end of the year 1803, was to be deemed the fund out of which payments were made during the ensuing year or years, until the same was exhausted ; and so from year to year, until the termination of the account, except that no interest after the year 1803 was to be credited on payments made by the defendant, until such fund of interest as aforesaid should first have been exhausted ; but as to any excess of payment, interest was to be computed thereon ; and in case it should so happen, that at the expiration of any year, the balance of interest should be found in favor of the defendant, then the same should be applied towards diminishing the principal money then due to the complainants, or to the estate. This order was subsequently modified, so as not to charge the defendant with interest on monies received by him until six months after the receipt. The accounts were stated according to this order, which was ratified and confirmed by the final decree of the chancellor. It will be perceived that the principle of this order, as the chancellor has expressed it, is simply this : that the interest or income of the estate shall first be applied and exhausted in the support of the children, and to answer the other exigencies of the trust, before the principal is encroached upon for those purposes. The proposition in the abstract, I apprehend, must command universal assent. It is neither more nor less, as a general proposition, than that it is the duty of a trustee to apply the income of the estate committed to him to the payment of the demands upon it, instead of putting that income into his own pocket, to be accounted for at the termination of the trust, and, in the mean time, appropriating the capital to the payment of the annual expenses of the trust. That species of conduct, which, in the management of an individual's own concerns, would be considered the extreme of folly and improvidence, cannot be consistent with the fi-

delity and discretion which the law requires from a trustee. What would be thought of a man who lived upon his capital, put out his income at interest, payable not annually, but at the expiration of twenty years ? Would a guardian be justified in investing the surplus income of his ward beyond their annual expenses in that manner ? Most clearly not, unless he showed, by the most conclusive testimony, that the state of the money market was such that no better investments could be made. Does the case become more favorable to the administrator or guardian, when he retains and uses the funds himself, instead of investing them, and can he be permitted to account upon a principle, which, if adopted in his contracts with third persons in relation to the trust property, would have been considered strong if not conclusive evidence of the want of common discretion and fidelity ?

The chancellor has correctly said, that it is the duty of trustees and guardians to keep the monies belonging to the trust estate properly invested. Circumstances may justify a deviation from that duty ; but those circumstances rarely occur, and when they do, the trustee is bound to state them to the court, as the reasons for his otherwise culpable neglect. If the trustee neglect to make investments, he ought to be made chargeable with the interest of the unemployed funds, unless satisfactory cause be shown for the omission to invest them.

The practical operation of the principle is undoubtedly to make the guardian who has taken to his own use the funds of the estate to pay the interest as it falls due, where the disbursements are equal to the whole income of the estate ; but if the disbursements or investments which he makes for the trust estate are less than the income, then he is not required, by the decision in this case, to pay the interest which he may owe the estate as it falls due. For example, suppose the annual interest of the trust fund which the guardian or trustee uses himself, instead of investing it, to be $2,000 ; this is annually cast and carried into what is called the disbursement fund. But that fund carries no interest ; and if the annual expenses of the wards are but $1,000, the remaining sum of $1,000 lies unproductive, and is carried, without in-

crease, into the disbursement fund for the next year. This is not compounding the interest. But it cannot be necessary for me to dwell longer upon the leading principle of the decree. I can add nothing to the able vindication of it contained in the opinion of the chancellor.

The amount paid into court by the appellant, under the order of the 7th of June, 1824, was paid to the credit of the cause generally, and not in extinguishment or satisfaction of so much of the complainant's demand; it was strictly a deposit, not a payment invested by order of the court, and retained under its control, to abide such disposition as the final merits of the cause should show to be just and equitable. The investment of it was the act of the court, not of the complainants; and the collateral evidence shows that the complainants were willing to receive it as a payment, to which the defendant objected, unless it was received as a payment in full, and the suit discharged. It also appears, that the suggestions of the complainants, as to the best mode of investing the stock, were not attended to by the defendant; and that if the proposition had been conceded to, no loss would have been sustained. If the investment had proved advantageous, the defendant would certainly have reaped the profit of it; and I perceive no principle of equity upon which he can be relieved from the loss, if any loss has been sustained.

Nor are the complainants precluded, by any allegation in their bill, from requiring the defendant to account upon the principles established by the chancellor, from the commencement of his trust. They do not seek to make him responsible for any of the transactions of Freeman Clarkson, his coexecutor, during his life; and there was no necessity for making the representatives of Freeman Clarkson parties to the bill.

I have thought it unnecessary to do any thing more in this cause than state the conclusion at which I have arrived; as I could but have repeated the arguments contained in the elaborate, and, to my mind, conclusive opinion of the learned chancellor who pronounced the decree below, which, I think, ought to be affirmed in all its parts.

De Peyster
v.
Clarkson.

STEBBINS, Senator, was satisfied that by the neglect of the defendant to invest the trust monies which from time to time remained on hand, he had subjected himself to the charge of interest; but as he was acquitted by the court below, and properly acquitted of all fraud in the management of the trust fund, he thought the rule adopted by the chancellor too harsh, and that the true rule to be adopted in stating the account was such an one as would fully and fairly indemnify the respondents against the neglect of the appellant to invest the trust funds. The effect of the rule adopted is to compel the executor to pay a greater sum for the use of the money than the funds could have been made to yield had ordinary vigilance been used in making investments. It gives to the respondents more than compound interest, or than they would have been entitled to, had the account been stated with annual rests. He added, he was not prepared to say what should be the precise rule, but was inclined to think that the interests of the respondents would be sufficiently protected by stating the account, with rests, every five years. He was therefore of opinion that the decree of the chancellor should be modified; and should a majority of the court concur in that opinion, a rule might be agreed upon on consultation.

The question was then put, Shall the decree of the chancellor be *affirmed*, or shall it be *modified?* And the members of the court expressed their opinion as follows:

For affirmance 12.

For *affirmance*—Mr. Justice SUTHERLAND, Senators BENTON, ENOS, HAGER, LAKE, M'CARTY, M'MICHAEL, SCHENCK, THROOP, TYSEN, WILKESON and WOODWARD.

For modification, 9.

For *modification*—Senators CRARY, ELLSWORTH, M'MARTIN, OLIVER, SMITH, STEBBINS, TODD, WARREN, and WHEELER.

Whereupon, the decree appealed from was *affirmed*, with costs to be paid by the appellant, and the record was ordered to be remitted, &c.