James A. Delehanty, S.
By agreement of the parties interim disposition is made of the objections interposed by the special guardian in behalf of an infant. There have been two prior accountings in this estate each of which was settled by decree. Some of the matters now urged by the special guardian are matters which were disposed of by the prior decrees and in consequence this court may not consider now the points raised by the special guardian in such respects. One of the matters so fore *718 closed is that of commissions. The prior accounts and the decrees thereon conclusively establish that the provision in the will does not preclude the payment of commissions at the statutory rate to the accounting executors. Again, the criticized payments to Syria Temple and to New Mexico Consistory No. 1 were reported in the prior accounts. While the payments were improper under the construction eventually made of deceased’s will the amounts have been recovered and no question in respect of the funds is now open.
The objection that the distributions to the residuary legatees were in disregard of the rights of the infant is open for consideration. The record shows that the executors were advised by counsel on the subject of the distribution and that they acted on the basis of the advice given. The estate finances were necessarily involved in the estate tax liability and that liability in turn was dependent on the ultimate determination of the extent of the charitable gifts under the will. There is no reason on the record to doubt the good faith of the executors in making the distribution nor to doubt that the attorneys advising them acted on a basis which they believed to be sound. Hence no basis exists for any surcharge in favor of the infant. Whatever adjustment is necessary in the matter of distribution can be made in the decree on this accounting.
The failure to make distribution to the infant in the degree which the special guardian claims to have been his right meant only that additional funds were in the hands of the executors rather than in the hands of the general guardian of the infant. In the general guardian’s hands the funds could have been invested and could have been made productive of income. Possession by the executors of this fund which the special guardian now says should have been distributed to the infant differs in no respect from that possession of other funds of which the special guardian complains because they were held uninvested. The special guardian is of the view that all the income on the residuary belongs to the infant. That question is not before the court for the moment. The position taken by the special guardian is that there has been grave detriment to his ward by reason of the failure of the executors to invest cash in their hands.
It is settled law that the fiduciary obligation of an executor requires that he make estate funds productive whenever a substantial sum is in his hands uninvested and distribution of it is not possible within a reasonable period. In an accounting by an executor and guardian the Chancellor in De Peyster v. Clarkson (2 Wend. 77, 87) said: “I cannot reconcile it with *719 my views of equity as between the administrator and the parties in distribution, or the guardian and ward, that the administrator or guardian shall be permitted to retain the money belonging to the estate he has in charge, and either apply it to his own use, or causelessly suffer it to lie idle and exhaust the capital, or other resources of the estate, in the expenditures or payments required by the exigencies of the trust. It is the duty of trustees and guardians to keep the moneys belonging to the trust estate properly invested.
‘ ‘ Circumstances may justify a deviation from that duty, and those circumstances may be so strong as to require the trustee, in the exercise of sound discretion, to refrain from making investment ; but those circumstances rarely occur; and when they do, the trustee is bound to state them to the court as the reasons for his otherwise culpable neglect. Ordinarily, the duty of the trustee must predominate, and he is bound, within a reasonable time to be allowed him for the purpose, to see that the moneys which come to his hands in the course of his agency, are securely and beneficially invested for the benefit of those for whom he acts; and if that duty be neglected, he must be made chargeable with the interest of the unemployed funds, unless satisfactory cause be shown for the omission to invest them.”
This case and many others were cited by Mr. Surrogate Wingate in Matter of Kruger (139 Misc. 907, 908) where he discussed the problem and (citing Scripture) held “ that one of the primary duties of a fiduciary is to make productive the fund in his hands and not to keep it 1 laid up in a napkin ’.” To the same effect see Matter of Katz (127 Misc. 16, affd. 219 App. Div. 783); Matter of Eddy (134 Misc. 112,116-117) and the cases there cited and Warren’s Heaton on Surrogates’ Courts (Vol. 3, § 264, par. 1). There was every reason why the very large cash sums in the hands of the executors should have been invested. There were pending questions of construction and of taxation which inevitably would delay the final distribution of the estate. The amount available for investment was so large that ordinary business prudence required its investment. The failure to invest it was plainly a breach of the fiduciary duty of the executors.
That breach of duty is surchargeable at the instance of the infant and consideration must be given to the extent to which it will be penalized. The decree made on the prior accounting forecloses all inquiry in respect of the period ending November 16,1940. Limiting the inquiry therefore to the present accounting period it is seen from the record that the cash balance on hand was at times as high as $1,400,000 and that at the closing *720 date of the account over $500,000 of this amount had remained on hand uninvested. That both the fiduciaries and their counsel were alive to the fact that there was risk in keeping idle and unproductive sums so large is clear on the record. In an effort to comply with their fiduciary duty the executors in June, 1942 made a purchase of $450,000 face value of United States treasury certificates of indebtedness. These certificates had a limited term and when they became due were paid off. The financing of the war effort made like certificates of indebtedness available and exchange of an old issue for the new was provided for in the Treasury offers. By taking advantage of these opportunities for exchange the same principal sum was kept invested until August 1, 1944. Though at that time like investments could have been secured the funds have since remained wholly uninvested, wholly idle and wholly unproductive.
The criticisms of the special guardian present the questions (a) whether more than $450,000 ought to have been invested at the time the original investment was made, (b) whether the investment then made should have been made in more productive .form, (c) whether the investment then made should have been continued in the form selected beyond August 1, 1944 and (d) whether after August 1, 1944 funds should have been invested and, if so, in what form and to what extent.
"While it is clear on the record that more money could have been invested in 1942 there is no sufficient basis for finding fault with the executors’ conduct up to the redemption of the last certificate of indebtedness on August 1, 1944. As of that date like certificates earning the same rate could have been taken by the executors. The court holds that such further certificates should have been purchased and that the executors were surchargeable for not investing the same amount — $450,-000 — in such certificates. The certificates were of a type which assured the safety of capital. They required no substantial expense for administration. They were readily convertible into cash. There is no showing of any valid reason why the investment was not continued. The executors are required to make good the share which the infant would be entitled to have in income earned at %% per annum on $450,000 for one year from August 1, 1944.
From and after August 1,1945 there probably were available like investments which had like safety of principal but the showing on the record is not sufficient to warrant the court in finding that a like sum of money could have been continued in a productive investment. However the proof is ample that at least $250,000 could have been invested in savings bank accounts *721 with little effort on the part of the executors and without placing in any single deposit more than the insured maximum of $5,000. There is enough in the record to hold the executors accountable for interest on the lesser capital sum of $250,000 for the period beginning August 1, 1945 and ending with the closing date of the present account at the annual rate of 1%%- When the amounts of lost income are ascertained the court will hear the parties on the subject of the infant’s share thereof.
These rulings leave for consideration only the question of attorney’s fees. Neither the petition nor citation makes any mention of the fixation of attorneys’ fees. The account sets up substantial payments to counsel and no specific objection is made to any actual payment so listed. In the information schedule there is reference to an intention of counsel to charge a found sum and to ask an additional $10,000 in accordance with a bill heretofore rendered by them to the executors to cover services still to be performed in completing the administration of the estate. On that state of the record the court cannot do more than pass upon the fees already paid. While the objections have not been specifically formulated so as to deal only with paid fees the court interprets them as sufficient to put in issue the total amount actually paid and as asking that the credit sought for fees paid be reduced.
In passing on the fees heretofore paid it is necessary to consider an earlier proceeding in the estate which was initiated to establish estate interest in bank accounts in England. After that proceeding was completed and a compromise made of the estate claims under court approval the court was asked to pass upon the fees of estate counsel and made a decree authorizing the payment of a substantial fee. Having in mind the importance to the finances of the estate of that prior proceeding to obtain the moneys in England and having in mind the result achieved by counsel in that controversy as well as the work necessarily involved in the construction questions and the tax questions in the estate as a whole the court finds that the amount so far paid to counsel for the fiduciaries is not in excess of fair compensation for the work done up to the date of this decision. On the basis of that finding the objections of the special guardian are overruled so far as they seek adjudication that excessive payments have already been made. As already stated, the court on this record can make no further ruling. No approval is given to the bill for services reported to have been rendered for a larger sum than the amount paid. No finding is made respecting the value of services to be rendered hereafter in the completion of the affairs of the estate. If any *722 further allowance to counsel is to be made there must be shown both the need for services and the value of such services as are necessarily rendered.
The parties are to proceed on the basis of this decision to take the necessary further steps to close the affairs of the estate.