# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTIES OF SUFFOLK AND NANTUCKET, MARCH TERM 1836, AT BOSTON.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice,
Hon. SAMUEL PUTNAM,
Hon. SAMUEL S. WILDE, } Justices.
Hon. MARCUS MORTON,

## William Boynton *et al. versus* John D. Dyer.
## Ruth Boynton *versus* John D. Dyer.

A petition to a judge of probate to allow an appeal from his decree, and a formal decree granting such petition, are not usual in practice, nor requisite to the validity of an appeal.

On an appeal from a Court of Probate, the appellant is restricted to the points specified in his reasons of appeal, but not to the same arguments, views or evidence which were presented before the Court of Probate.

In general, if a guardian neglects to put his ward's money at interest, he will be charged with interest ; and in cases of gross delinquency, with compound interest.

A guardian is entitled to a reasonable time in which to make an investment of his ward's money.

Where a guardian had settled two accounts in the Probate Court without charging himself with interest, and no adjudication was made on this subject, it was *held*, that on the presentation of his third account he should be charged with interest from an early period after his appointment, in the same manner as if no previous account had been settled.

But if the question of interest had been put in issue and decided on the settlement of the former accounts, it could not be revised so long as the former decrees remained in force.

Where a party interested in the estate of a ward, certified his approval of an account in which the guardian had not charged himself with interest, but no

Boynton
v.
Dyer.

discussion or controversy was had on this subject, it was *held* that he was not precluded from having the error corrected when the guardian presented a subsequent account for allowance in the Probate Court. But where a ward, seven months after coming of age, certified that his guardian's final account was correct, and gave him a release of all demands, he was not permitted to open the settlement because the guardian had not charged himself with interest.

In a guardian's account the interest for a year should be added to the principal, and the current expenses of the year should be deducted from the amount, and the balance will be the principal for the next year ; and so on from year to year.

THESE cases were appeals from decrees of the Court of Probate for the county of Suffolk, passed on the 11th of March, 1833.

The decree in the first case was one allowing the account of John D. Dyer as guardian of Ruth Boynton, a person *non compos mentis;* and her children, William, John and Ruth, appealed from the decree, for the following reasons : —

1. Because the judge refused to open and re-examine former accounts settled by the guardian, while two of the appellants were minors under the guardianship of Dyer and the other was absent in the city of New York, (they being solely interested in the estate of their mother,) in which accounts, as they allege, were errors, overcharges and omissions, which they have not had an opportunity to prove.

2. Because the guardian, from the time of his appointment to the present time, has had in his hands a large sum of money belonging to the estate of the ward, for which he ought to charge himself with interest, but the judge allowed him to settle his several accounts without charging himself with interest.

The second case was an appeal from a decree allowing the account of Dyer as guardian of Ruth Boynton, the daughter The reasons of the appeal were : —

1. Because the judge allowed the guardian to settle his accounts without charging himself with interest on a large sum of money belonging to the ward's estate, which he had in his hands from the time of his appointment to the time of the settlement of his account, in March 1833.

2. Because the judge permitted the guardian to diminish the ward's estate, when the income of her real estate and interest on her money in the hands of the guardian, were more than sufficient for her maintenance and education.

3. Because the guardian was allowed one dollar and fifty cents per week for the board of the ward, when her services in his family were a sufficient compensation.

*Field*, for the appellants. In the first of these two cases the guardian should be charged with interest on the money in 'his hands, and the former accounts should be opened for that purpose. Since 1823, the trust fund has been, on an average, about 800 dollars. *St.* 1783, *c.* 38, § 4 ; 2 Kent's Comm. (1st edit.) 187, 188 ; Reeve's Dom. Rel. 325 ; *Fay* v. *Howe*, 1 Pick. 547 ; *Saxton* v. *Chamberlain*, 6 Pick. 422 ; *De Peyster* v. *Clarkson*, 2 Wendell, 77 ; *Longley* v. *Hall*, 11 Pick. 120 ; *Stearns* v. *Stearns*, 1 Pick. 157 ; *Baylies* v. *Davis*, 1 Pick. 206. In the second case the fund in the guardian's hands is less, but the same principle is applicable.

*S. D. Parker*, for the appellee, objected that the appeal could not be sustained, because there had not been a petition to the judge of probate to grant the appeal, nor a decree granting it ; *St.* 1817, *c.* 190, § 7, 8, 9 ; that it did not appear that the judge of probate had been requested to open the former accounts, nor that the question of allowing interest had been made when those accounts were settled, and that consequently the judge was not in error in not adjudicating upon those questions ; that the former decrees, as no appeal from them had been taken, could not now be questioned ; that there was no evidence that the guardian had received any interest or made use of the money in his hands ; and that the account settled in 1829 was approved of by William Boynton, as appeared by his certificate thereon, and he at least is estopped to object that interest was not charged. He cited *Stearns* v. *Brown*, 1 Pick. 530 ; *Storer* v. *Storer*, 9 Mass. R. 37 ; *Wyman* v. *Hubbard*, 13 Mass. R. 232.

MORTON J. delivered the opinion of the Court. The appeal by William Boynton and others is properly taken, and the case is regularly before us. The appellants, being presumptive heirs of the ward, are so interested in her estate, that they have a right to claim an appeal from a decree affecting it. No other person competent to make an appeal has any interest in the question. The party *non compos* is presumed to be incapable of doing it. The appellants are "persons aggriev-

*Margin:* Boynton *v.* Dyer

*March 11th*

*March 14th*

ed " by the decree, within the meaning of the statute of 1817, *c.* 190, § 7. *Penniman* v. *French*, 2 Mass. R. 140.

It appears that they claimed the appeal within " one month " after the decree was made ; gave their bond to prosecute the appeal within " ten days " thereafter ; filed their reasons of appeal within another " ten days " then next ensuing, and duly notified the adverse party thereof. This appears of record. The aggrieved parties having complied with the conditions imposed by the statute, are entitled to their appeal. It is their right, and does not depend on the discretion of the judge of probate. And if he cannot directly disallow the appeal, he cannot do it by omitting to perform any act essential to its allowance. But we see no omission in this case. We believe it would be a novelty to make a formal decree granting an appeal. Enough appears here to show that the appeal was claimed and granted, according to the intent of the statute.

The effect of an appeal properly taken is to vacate the decree or judgment appealed from. *Campbell* v. *Howard*, 5 Mass. R. 376 ; *Murdock, Appellant*, 7 Pick. 327. Hence a new judgment or decree affirming or reversing the former one, must be made in this Court. The case is to be tried anew here, and each party may adduce new evidence and rely upon new grounds to support the claim or the defence. But in the mode of trial there is a manifest difference between an appeal from a common law court and from the Court of Probate. In the former, the whole case is to be tried over again, as if it never had been tried. In the latter, the appellants are restrict ed to such points as are specified in their reasons of appeal. These are the only subjects which the adverse party has been notified to be prepared to investigate. Every thing else, not having been objected to, is impliedly assented to and presumed to be correct.

But although the appellants must be confined to their rea- sons of appeal, yet they are not restricted to the same argu- ments, or the same views, or the same evidence, which were presented before the Probate Court. The very object of the appeal may be to supply the accidental or inevitable absence of witnesses or documents on the first trial. Persons who

were not even present when the decree was made, have a right to appeal.

The decree appealed from was the allowance of the third account of the guardian. And the only objection to this account, which is presented by the reasons of appeal, is the omission of interest. The appellants contend, that the guardian ought to have charged himself with interest on the ward's money in his hands. It is not necessary to the full investigation of this question, to open either of the former accounts, or to go behind either of the former decrees. They may be regarded as valid and conclusive, and yet if there were any omissions or errors in them, they may properly be corrected in a subsequent account. This proposition does not extend to matters which were put in issue and decided in the former decree. So far, it is *res judicata*, and cannot be revised while the former decree remains in force. *Saxton* v. *Chamberlain*, 6 Pick. 423. If therefore the guardian is liable for interest, it should be charged to him in this account, not only from the last settlement, but from the commencement of his guardianship. No adjudication having been made upon this point, it is now as much open as if no account had been settled.

Nor will the assent of William Boynton to the second account, limit our inquiries to the time of rendering that account. The other appellants who were then minors, certainly cannot be bound by his agreement. And even William Boynton should not be precluded from correcting any errors or oversights which he then committed. Had this matter been discussed by the parties, and had they adjusted a controverted question by a compromise, it would have stood on different ground, and we know of no reason why the parties should not be bound by their agreement. But no interest was charged in either of the accounts, and there is no reason to suppose that the subject attracted the attention of the parties, or that their minds were brought to act upon it at all. It is the common case of an error or omission in the settlement of an account, which always may be corrected. *Stearns* v. *Stearns*, 1 Pick. 206 ; *Saxton* v. *Chamberlain*, 6 Pick. 423.

We are now brought to the consideration of the question, whether the guardian shall be charged with interest. And upon this we entertain no doubt.

Boynton<br>*v.*<br>Dyer

The general doctrine in relation to trustees is, that they are bound to take the same care of the trust fund as a discreet and prudent man would take of his own property, to manage it for the exclusive benefit of the *cestui que trust*, and to make no profit or advantage out of it for themselves ; to keep it, at all times when practicable, profitably invested, and punctually to account for the income as well as the principal. If any of these duties are neglected, the loss must fall on the trustee and not on the *cestui que trust*. Hence if the trustee, through gross carelessness or ignorance, make a bad investment, and the whole or a part of the fund be lost, he will be holden to replace it. And if he neglect to invest at all, he will be chargeable with the income which would have been derived from a proper investment. And Chancellor *Kent*, 2 Comm. (1 edit.) 188, says, " if he neglects to put the ward's money at interest, but negligently, and for an unreasonable time, suffers it to lie idle, or mingles it with his own, the court will charge him with simple interest, and, in cases of gross delinquency, with compound interest." These reasonable and equitable principles are not only the established doctrines of English chancery, but they have been adopted throughout this country. *Newton* v. *Bennet*, 1 Brown's C. C. 360 ; *Perkins* v. *Baynton*, ibid. 375 ; *Treves* v. *Townshend*, ibid. 384 ; *S. C.* 1 Cox, 51 ; *Pocock* v. *Reddington*, 5 Ves. 794 ; *Raphael* v. *Boehm*, 11 Ves. 92, 13 Ves. 407 and 590 ; *Dornford* v. *Dornford*, 12 Ves. 127 ; *Ashburnham* v. *Thompson*, 13 Ves. 402 ; *Tebbs* v. *Carpenter*, 1 Madd. Ch. R. 297 ; *Stacpoole* v. *Stacpoole*, 4 Dow's P. C. 209 ; *Dunscomb* v. *Dunscomb*, 1 Johns. Ch. R. 508 ; *Schieffelin* v. *Stewart*, ibid. 620 ; *Manning* v. *Manning*, ibid. 527 ; *Holridge* v. *Gillespie*, 2 Johns. Ch. R. 30 ; *Davoue* v. *Fanning*, ibid. 252 ; *Smith* v. *Smith*, 4 Johns. Ch. R. 281 ; *Evertson* v. *Tappen*, 5 Johns. Ch. R. 498 ; *Rogers* v. *Rogers*, 1 Hopkins, 515 ; *Clarkson* v. *De Peyster*, ibid. 424 ; *S. C.* in error, 2 Wendell, 77 ; *Lovell* v. *Briggs*, 2 New Hampsh. R. 218 ; *Church* v. *Marine Ins. Co.* 1 Mason, 345 ; *Mills* v. *Goodsell*, 5 Connect. R. 475 ; *Prevost* v. *Gratz*, 1 Peters's Circ. C. R. 364.

According to the rules laid down by our courts, executors and administrators have no right to charge interest on money

advanced by them, and are not required to invest the funds which come into their hands in their official capacity. Hence they are not chargeable with interest, except where they actually receive it or make some profitable use of the funds, or are guilty of negligence in accounting for them. *Storer* v. *Storer*, 9 Mass. R. 37 ; *Wyman* v. *Hubbard*, 13 Mass. R. 232 ; *Stearns* v. *Brown*, 1 Pick. 530. But the duties, and of course the liabilities of guardians and of executors and administrators, are different, and in some respects very dissimilar. It is the duty of the former to invest the funds of the ward in a safe and permanent manner, paying only so much as is necessary to defray his current expenses. It is the duty of the latter, in the most speedy manner practicable, to convert the estate of the deceased into money and to pay it over to the creditors, heirs or legatees. They must therefore generally keep the funds on hand to meet the demands against the estate, and to prepare for the prompt settlement and distribution of the estate.

The appellee, during his long guardianship, had the management and use of the personal property of the ward. For this he is chargeable with interest. It only remains to determine in what manner it shall be computed. The rule is, in ordinary cases, to charge simple interest. But in cases " of gross delinquency " compound interest is allowed. In *Schieffelin* v. *Stewart*, Chancellor *Kent* lays down this rule : if the trustee suffer the trust money to lie idle, he is chargeable with simple interest, but if he convert it to his own use or employ it in his own business or trade, he is liable for compound interest. In *De Peyster* v. *Clarkson*, 2 Wendell, 77, the subject is fully and learnedly discussed, and substantially the same doctrine adopted. In *Robbins, Judge,* v. *Hayward,* 1 Pick. 529 and note, compound interest was allowed ; and in *Stearns* v. *Stearns* the propriety of the rule was recognized. Were it necessary, we should not hesitate to apply it to this case, for we think it comes within the principle. But we believe it is not. For we think the annual disbursements exceeded the income, and if so, there was no interest to be added to the principal. There is nothing better settled, than that the annual income, whether it be interest or rent, shall be applied to the

discharge of the current expenses. And if it fails to meet them, a portion of the capital must be taken for the purpose, and thus the new capital upon which interest is to be computed will be diminished at the end of each year. Let the interest be computed for one year, add it to the principal, then deduct the expenses from the amount, and the balance will be the new capital upon which the next year's interest is to be computed, and so on from year to year. This is equally just with the rule laid down in *Clarkson* v. *De Peyster*, and much more simple.

But the interest should not commence from the appointment, nor from the receipt of the ward's property. The guardian should have a reasonable time in which to make the investment. In *Clarkson* v. *De Peyster* six months were deemed sufficient. In *Schieffelin* v. *Stewart* nearly two years were allowed. Each claim must depend on its own peculiar circumstances. No general rule would do justice in all cases. The guardian settled his first account within one year. This showed diligence and promptness on his part, and we think forms the proper point from which to commence the computation of interest.

Let the account be settled by the above rules, the decree be made to conform to it and be remitted, for further proceedings, to the Probate Court.

The second case comes entirely within the same principles. Let the account be stated accordingly, reducing the board of the ward to one dollar per week. This weekly allowance however is to extend back only to the last settlement, that decree being conclusive upon this subject.

*Note.* Dyer had been the guardian of John Boynton, and in April 1829, he presented to the Probate Court the second account of his guardianship, embracing the balance from his first account, settled in July 1822, and moneys received and paid from that time to November 7th, 1828, the day when the ward came of age. The guardian had not charged himself with interest on the money in his hands, but the ward certified that this second account was correct and gave the guardian a receipt in full of all demands, bearing date the same

Boynton
*v.*
Dyer.

day on which this account was passed in the Probate Court. In June, 1834, Boynton cited Dyer into the Probate Court to settle a final account, claiming a balance due for the interest received by Dyer. The judge of probate decreed that Dyer owed nothing to Boynton, and from that decree Boynton appealed. But inasmuch as the appellant, seven months after he had become of age, made a deliberate settlement with the appellee, and gave him the receipt in full of all demands, and no fraud or oppression was alleged, this Court dismissed the appeal.