NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-539

ANGELIKI G. PAPADOPOULOS

vs.

NORFOLK & DEDHAM MUTUAL FIRE INSURANCE COMPANY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Angeliki G. Papadopoulos, owns commercial property in Braintree that she insured through a policy issued by the defendant, Norfolk & Dedham Mutual Fire Insurance Company ("Norfolk"). In January 2018, Papadopoulos discovered that her property had suffered substantial water damage, and the following month, she filed a claim regarding such damage. After Norfolk denied the claim on several grounds, Papadopoulos filed the current action seeking to establish Norfolk's liability.[1] A Superior Court judge allowed Norfolk's motion for summary judgment based on one of those grounds, which relates to how long the property had been vacant at the time the loss or damage occurred. On Papadopoulos's appeal, we vacate so much of the

_____

[1] She also brought claims alleging that Norfolk violated G. L. c. 93A and G. L. c. 176D in how it handled her claim.

judgment as dismissed her claims relating to Norfolk's alleged liability for damage to her roof, and remand for further proceedings consistent with this memorandum and order. The judgment is affirmed in all other respects.

Background. 1. The property damage. The commercial building that Papadopoulos owns stands at 1-3 Commercial Street in Braintree. Immediately next door was another building that shared with Papadopoulos's building what was described in the record as a "fire/party wall" (party wall).

Papadopoulos's building became vacant at the end of January 2017, and it remained vacant for at least another year. In February 2017, the adjacent building was partially demolished by its owner. According to Papadopoulos, the demolition caused damage to the roof of her building and exposed the party wall to the elements. Over time, Papadopoulos alleges, the damage to the roof or the uncovering of the party wall allowed water to infiltrate the interior of her building, thereby causing extensive water damage there.

On April 7, 2017, Papadopoulos and her daughter visited the property and did not see any water damage. She discovered such damage on a return visit in January 2018, and she notified Norfolk of the damage on February 9, 2018. An insurance adjuster from Norfolk, John Tutty, promptly inspected the property. He prepared a report documenting what he observed

2

(Tutty report).  Tutty substantiated that the Papadopoulos building had suffered water damage from precipitation that had entered it.  For example, Tutty stated that "[t]he drop ceiling tiles [were] stained and some had fallen down with amount of rain water that came with the last rain storm."  Tutty focused on whether the roof was the source of the infiltration.  He did not observe "any storm damage" to the roof, but he did see, and photograph, debris on the roof and some pooling of water there.  Tutty did not address whether the infiltration of water was caused by the exposure of the party wall.

The Tutty report raised the possibility that three separate provisions in the policy might bar Papadopoulos's claim.  Those provisions were a limitation on coverage for interior water damage caused by precipitation, an exclusion relating to "continuous or repeated seepage or leakage of water," and the previously referenced vacancy provision on which the judge ultimately relied.  By letter dated February 27, 2018, Norfolk denied Papadopoulos's claim, citing all three of these provisions.

Apparently in response to being contacted by Papadopoulos's counsel, a lawyer for Norfolk sent a letter dated April 20, 2018, that explained that while Norfolk was still taking the position that it was not liable for Papadopoulos's claim, it would send a specifically named engineer out to inspect the

3

property.  The results of that planned inspection were not included in the summary judgment record, and it is not clear if the inspection ever took place.  In any event, Papadopoulos hired a structural engineer to inspect the property.  The engineer wrote a report, dated August 6, 2018, that focused on the exposed party wall as the source of the infiltration.  Specifically, the engineer's report stated that the water damage in the interior of the building "was produced by water infiltrating the exposed existing remains of the fire/party wall."  The report explained in some detail how allowing an interior party wall to become an exterior wall can create problems and what steps should be taken to try to avoid such consequences.

2.  The litigation.  After Papadopoulos filed suit, Norfolk filed a motion for summary judgment.  The motion relied solely on admissions that Papadopoulos had made and other undisputed facts.  Norfolk did not submit any affidavits of its own with respect to how the water damage was caused, e.g., whether such damage had been caused by precipitation that had infiltrated a damaged roof or the exposed party wall.[2]

---

[2] Norfolk asks us to take judicial notice of the summary judgment record in separate litigation between Papadopoulos and those involved in the demolition of the adjacent property, and it has submitted what purports to be a supplemental appendix that includes the relevant documents.  We decline Norfolk's request and strike the supplemental appendix from the record.  See Home

4

As noted, in ruling in Norfolk's favor, the judge relied on the vacancy provision that appears in a section entitled "Property Loss Conditions." That provision precludes coverage for certain kinds of damage, including "[w]ater damage," if it occurred more than a set period of time after the property had become vacant. Specifically, the provision states in pertinent part that "[i]f the building where loss or damage occurs has been vacant for more than [sixty] consecutive days before that loss or damage occurs," Norfolk "will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss: (a) Vandalism; (b) Sprinkler leakage . . . ; (c) Building glass breakage; (d) Water damage; (e) Theft; or (f) Attempted theft."

Based on the fact that Papadopoulos and her daughter did not observe any water damage when they visited the property on April 7, 2017, the judge concluded that it was undisputed that the property first suffered such damage after that date. Because at that point in time the property had been vacant for more than sixty days, the judge ruled that, as a matter of law, the vacancy provision relieved Norfolk of liability. The judge did not reach Norfolk's additional grounds for denying coverage.

Depot v. Kardas, 81 Mass. App. Ct. 27, 28 (2011) ("Although we may take judicial notice of the docket entries and papers filed in separate cases, we may not take judicial notice of facts or evidence brought out in those separate actions").

5

Discussion.  Papadopoulos alleged that the demolition of the adjacent building caused two types of damage to her property:  (1) damage to the roof itself, and (2) water damage to the interior of the building caused by the infiltration of precipitation through the damaged roof or through the exposure of the party wall to the elements.  We address Norfolk's liability with respect to the water damage first.  In doing so, we accept Papadopoulos's theory of what caused the water damage.[3]

As noted, neither Papadopoulos nor her daughter observed any water damage on April 7, 2017.  Papadopoulos did not submit any other evidence that water damage had occurred by that date, at which point more than sixty days already had passed since the property had become vacant.  Accordingly, we agree with the judge insofar as he concluded that -- under the plain language of the vacancy provision -- the water damage to the property is not covered.

Papadopoulos counters that if the water damage was caused by the demolition of the adjacent building in February 2017 -- as she maintains and we accept as true -- it is that date that

_____

[3] In this regard, we note that we are required to view the summary judgment record in the light most favorable to Papadopoulos, the nonmoving party.  Edwards v. Commonwealth, 488 Mass. 555, 556 (2021).  For purposes of opposing summary judgment, Papadopoulos supported her theory of what caused the water damage based on her own personal observations (e.g., her affidavit describing "significant tears in the roof membrane"), and on a report prepared by her engineering expert.

should be used for determining when the loss or damage occurred. Because February 2017 was well within the initial sixty days after the property became vacant, she argues that the vacancy provision does not bar recovery. Papadopoulos supports that argument by reference to case law that addresses insurance coverage where there was a chain of causation. See Jussim v. Massachusetts Bay Ins. Co., 415 Mass. 24, 27-30 (1993). That case law endorses an analysis that has become known as the "train of events test." Hanover New England Ins. Co. v. Smith, 35 Mass. App. Ct. 417, 419 (1993), quoting Jussim, supra at 27. Under it, there can be coverage for "a covered event which causes a loss in the form of an excluded event" (citation omitted). Hanover New England Ins. Co., supra at 420.

Passing over whether Papadopoulos preserved her argument based on the train of events test,[4] we are unpersuaded that such an argument applies here. The train of events test is not a hard and fast rule of law; rather, parties to an insurance contract are free to agree to exclude coverage for certain kinds of loss or damage even where the original cause of it would otherwise be covered. Hanover New England Ins. Co., 35 Mass.

_____

[4] Norfolk argues that Papadopoulos waived the issue by not arguing it in Superior Court. Papadopoulos points out that even if she did not refer to the doctrine by name, she did argue that the date of the event that caused the water damage was the one that should be used.

App. Ct. at 420 ("train of events test is not a principle of law that applies regardless of the policy language"). We agree with Norfolk that this is what occurred here. The plain language of the vacancy provision states that Norfolk is not liable for water damage that occurs more than sixty days after the property has become vacant "even if [it is a] Covered Cause[] of Loss." This language serves to render the original cause of the water damage beside the point.

While we agree with the judge that the water damage is barred by the vacancy provision, the same is not true with respect to any damage that the demolition caused to the roof itself. Norfolk has not presented any other viable theory for why Papadopoulos's claim for damage to the roof fails as a matter of law.[5]

We therefore vacate so much of the judgment as dismissed Papadopoulos's claims that Norfolk was liable for damage to her roof (including those claims based on alleged violations of G. L. c. 93A and c. 176D that relate to such damage) and remand this case for further proceedings consistent with this

---

[5] Norfolk does argue that Papadopoulos's claims are independently barred on the ground that she failed to provide timely notice of them. However, on the current record Norfolk has not demonstrated how it was prejudiced by any late notice. See Darcy v. Hartford Ins. Co., 407 Mass. 481, 485 (1990). We are unpersuaded by Norfolk's argument that it should not be required to show such prejudice.

8

memorandum and order.[6]  The judgment is affirmed in all other respects.

So ordered.

By the Court (Vuono, Milkey & Hand, JJ.[7]),

Assistant Clerk

Entered:  January 8, 2024.

---

[6] To the extent that Papadopoulos maintains that she is entitled to judgment in her favor on any of her claims as a matter of law, there is no merit to such arguments.  We deny Papadopoulos's request for appellate attorney's fees and costs.

[7] The panelists are listed in order of seniority.