HASLER *vs.* HASLER.

*In the matter of the accounting of* FERDINAND E. HASLER, *former Administrator of* EDWARD T. HASLER, *deceased.*

AN administrator will be allowed for the expenses of communicating intelligence of the death of the deceased to his family; for necessary charges attending his interment; and for his own travelling expenses; he will not be allowed for a copy of the inventory.

A. and B., administrators of C., employ counsel for the benefit of the estate; A. dies and B. administers on his estate.—Held, that the payment by B. of the demand for professional services against the estate of C., cannot be allowed to B. as administrator of A. by way of contribution, unless the estate of C. be insolvent.

An administrator having the funds of the estate in cash for six years, not showing that the money was kept in bank or otherwise ready to be paid over, and not explaining the delay in closing the estate, held chargeable with interest, on the presumption of use of the funds.

R. H. GILLETT, *for A. J. Hasler.*
A. BENEDICT, *for F. E. Hasler.*

THE SURROGATE. The deceased, while temporarily at New-York, committed suicide at the American Hotel, in this city, June 14, 1844. Administration was granted on his estate to his brother, F. E. Hasler, in the same month. The administrator proceeded under this grant until Oct. 6, 1847, when his letters were revoked on the production of the last will and testament of the deceased, admitted to probate in the State of Pennsylvania. Letters of administration with the will annexed, were thereupon issued to Anna J. Hasler, the widow of Charles A. Hasler, sole executor named in said will. The administratrix with the will annexed, then called the superseded administrator to account, and the matter now comes up for settlement, upon objections to the account as filed.

The disbursement of $12, for the expenses of a special messenger to the relatives of the deceased, at Philadelphia, informing them of his decease, should be allowed. He died at a public hotel in New-York, at a distance from home, and the most prompt means for the communication of the intelligence to his family, were proper and requisite, both for the security of his estate, adequate preparation for the transportation and burial of his body, and the avoidance of expense consequent upon delay. The charge of $10, for accompanying the body to Philadelphia, was sanc-

tioned by Charles A. Hasler, and may fairly be considered as a funeral charge.

The certified copy of the verdict, &c., of the coroner's jury, appears to have been required by law, in order to bury the deceased in Philadelphia, and the expense of it should be admitted.

The charges for postages are under the sum of twenty dollars, and are verified by the oath of the administrator. They are also proved *aliunde*.

The sum of $25, for the professional services of Mr. Benedict, is also allowed. Under all the circumstances attending the sudden death of the deceased away from home, the residence of the administrator out of the city, and the propriety of his taking legal advice, and the actual employment of the services of an attorney, in two instances, I think it quite reasonable.

The travelling expenses of an administrator, when engaged on the business of the estate, always constitute a proper charge, unless he has been in some default. Mr. Hasler's expenses on attending before the Surrogate, when cited, are therefore allowed. The bills of Mr. Cozzens of the American Hotel, and of Dr. Goldsmith, the surgeon, have both been fully proved.

The payment of $8 06, on account of C. A. Hasler, is good as against his interest in the estate. The same remark applies to the clothing delivered to C. A. Hasler, by the administrator, and to that part of it retained by the administrator. The will gives all the funds which came into the hands of the administrator, to Charles A. Hasler, and empowers him to distribute this clothing as he may think proper, and he appears to have authorized the administrator to appropriate the portion retained to his own use. This disposes of all the objections, except that relating to $5, for a copy of the inventory, which charge is disallowed; and that relating to the sum of $100, paid by the administrator to Mr. Benedict.

I have no doubt as to the reasonableness of the amount

paid Mr. Benedict, but the services appear to have been performed by him for the benefit of the estate of F. R. Hasler, the father of Edward T., the deceased, and of Ferdinand E., the administrator. Edward and Ferdinand, were the administrators of their deceased father at Washington, in the District of Columbia, and jointly as administrators, retained Mr. Benedict in a suit against their father's estate in that city. This appears, by their joint letter of 25th January, 1844. They were, therefore, both liable to Mr. Benedict upon this retainer, individually, and it was also a fair claim upon the estate for which the services were rendered. The deceased appears to have made a separate promise to Mr. Benedict, to pay him on his arrival at New-York, but this would not change the nature of the original undertaking, as between him and Ferdinand. Individually, as between themselves, each was bound to pay half the amount, and on paying the whole, could enforce contribution. As administrators, they had each a right to pay it out of the estate for which the services were rendered. Ferdinand, being the surviving administrator of that estate, and having paid the claim, the presumption is, that it was done for the account and out of the funds of his father's estate, and not out of the funds of his brother's estate. Indeed, he had no right, representing as he did, both, to pay it out of the latter, unless the former was insolvent. This was not pretended; and I must, therefore, disallow that item of disbursement. Even if it were allowed, I should have to turn around and charge him for the amount, as a debt against the estate of his father, of which he is administrator, and for the collection of which he would be liable, unless he had used due diligence and failed in the effort. (*Shultz* vs. *Pulver*, 3 *Paige*, 182 ; 11 *Wendell*, 361 ; *Smith* vs. *Lawrence*, 11 *Paige*, 206.)

The administrator has had the funds of the estate in his hands since June, 1844; and he should be charged with interest on the balance, after deducting his payments. There is no satisfactory explanation of the long delay which has taken

LAW SCHOOL LIBRARY

place in the adjustment of this estate, nor does it appear where the funds have been deposited, or how employed, with the exception of $500, loaned on bond and mortgage. It was in the·power of the administrator, to have had his account settled and the funds paid over, 18 months after the grant of letters ; and he should, therefore, be charged with interest from that time (1 *Binney*, 194 ; 11 *Seg. & R.*, 16 ; 7 *Ibid.*, 268 ; 2 *Wend.*, 77 ; 2 *Barb. Ch. R.*, 211 ; 1 *Johns. C. R.*, 510 ; *Ibid.*, 84 ; 1 *Paige*, 480 ; 11 *Paige*, 143 ; 1 *Bar. Ch. R.*, 78); unless he shows that " the money was kept in bank or otherwise, ready to be paid over when called for" (11 *Paige*, 145). If that can be done now, I will afford him an opportunity of establishing it; otherwise, " by long delay in settling his account, the use of the money may be inferred," and interest be chargeable. (7 *Yerger*, 172 ; 4 *Dessaus.*, 369 ; 1 *J. C. R.*, 84 ; 1 *Vernon*, 196 ; 1 *Bro. C. C.*, 385 ; 11 *Vesey*, 61 ; 1 *Russ. C. C.*, 151 ; 1 *Coll.*, 177 ; 2 *Coll.*, 295.)