Harrington v. Libby.

GEORGE C. HARRINGTON, Administrator, &c., *against* JAMES
S. LIBBY, individually, and as collector of the estate of
Edwin P. Christy, deceased.

(Decided December 31st, 1875.)

A party has a right to discontinue a suit at any time, even against the wishes of
the opposite party, and where an administratrix of an estate having called a
collector of the estate to account before the surrogate, before the return day
of the citation, served a notice on the surrogate that she discontinued the pro-
ceeding, and immediately thereupon commenced an action against him for an
accounting in this court, after which the collector filed his account with the
surrogate, had it referred to an auditor, and a decree entered settling his ac-
count: *Held*, that this subsequent proceeding before the surrogate was no bar
to the action in this court to compel the collector to account.

It is the duty of a collector or special administrator of an estate, whose appoint-
ment is only of a temporary character, to endeavor, if possible, to obtain some
interest on moneys in his hands, and in most cases the proper course for him
to pursue is to deposit the fund in some trust company which is regarded as a
proper depositary of trust funds, and which allows interest on deposits, and in
case he fails to do so, he may be charged with such interest as he might have
obtained if he had so deposited it.

It is proper, however, for such a collector to retain in his hands a reasonable sum
to defray current expenses, and he is not to be charged with interest on such
sums.

Upon appeal from a judgment entered upon the report of a referee before whom
an accounting has been had, the interlocutory judgment ordering the account-
ing and appointing the referee may be reviewed when it is connected with and
essential to the rendering of a proper final judgment.

APPEAL by defendant from a judgment of this court, en-
tered on an order of this court, made at special term by Hon.
HAMILTON W. ROBINSON, confirming the report of THOMAS H.
LANDON, Esq., as referee in an accounting had before him.

The action was originally commenced by Harriet E. Christy,
as administratrix of Edwin P. Christy, deceased, against the
defendant, to compel him to account as collector of the estate
of the said Edwin P. Christy, appointed by the surrogate of the
county of New York, pending a contest over the right of the
plaintiff to be administratrix. The defendant interposed a de-
murrer to the complaint on the ground that this court had not

Harrington v. Libby.

jurisdiction of the action, which was overruled both at special and general term of this court (see the decision reported under the title of *Christy* v. *Libby*, 2 Daly, 418).

The defendant then answered and set up as a bar to the action, that there had already been an accounting before the surrogate of the county of New York in regard to the matter set up in the complaint, and that the plaintiff had been a party to that accounting, and that the surrogate had rendered a final decree settling the amount for which the defendant was liable as collector. The issues raised by the answer came on for trial in May, 1869, before Hon. George C. Barrett, then a judge of this court, who found, as a matter of fact, in regard to this defense, " That at the time this action was commenced, there was no accounting before said surrogate by or on the part of the defendant as such collector or special administrator. That there was no accounting of the defendant as such collector or special administrator before the surrogate of the county of New York, after the commencement of this action ; the said accounting being *ex parte*, the plaintiff being no party thereto."

The evidence on which he based this finding is stated in the opinion. He also found, as a conclusion of law, " That the plaintiff, as such administratrix, is entitled to all the moneys, property and effects which came into the possession or under the control of the defendant as such collector or special administrator, or to which he was entitled, excepting such moneys as had been paid, laid out and expended by him in collecting, preserving and protecting said property and effects, together with his legal commissions."

A reference was also ordered to Thomas H. Landon, Esq., before whom the defendant was directed to account.

From the decision of Judge Barrett, the defendant appealed to this court at general term, where the same was affirmed.

Pending the accounting, the plaintiff Harriet E. Christy died, and the plaintiff George C. Harrington, who had been appointed administrator in her place, revived the action and procured himself to be substituted as plaintiff. The referee reported that the defendant was chargeable with $30,854 46, besides certain bonds of the cemetery of the Evergreens. The referee's report was confirmed by Judge Robinson.

Harrington v. Libby.

The facts on which the exceptions to the referee's report were based are fully stated in the opinion.

*Wm. Fullerton* and *E. L. Fancher*, for appellant.

*C. Bainbridge Smith*, for respondent.

CHARLES P. DALY, Chief Justice.—The obligation of the defendant to account in this action, was decided upon the trial of it before Judge Barrett. The objection was there made that an accounting had been regularly instituted before the surrogate, and that his decree in that proceeding was conclusive, and binding alike upon the administrator and the collector, the defendant in the present action. Judge Barrett found, as matter of fact, that there was no accounting before the surrogate when this action was commenced, and no accounting afterwards, because the accounting relied upon was *ex parte*, the original plaintiff, Mrs. Christy, the administratrix, not being a party to it.. The respondent states that no exceptions were taken to the findings of fact by Judge Barrett, but we find the exceptions incorporated in the case. The judge decreed that the defendant should account, and appointed a referee to take the accounting. From this decision, or interlocutory judgment, the defendant appealed to the general term, and Judge Barrett's decision was affirmed.

If these exceptions were taken, they must have been heard and passed upon by the general term, and cannot be again reviewed by the general term upon an appeal from the final judgment (*Mapes* v. *Coffin*, 5 Paige, 296). But if the question is an open one, and has not been reviewed in our previous decision, then I have no hesitation in holding that Judge Barrett's decision was correct. A party who commences an action, or institutes a proceeding, has a right to discontinue it, even against the wishes of other parties to it (*Innes* v. *Lansing*, 7 Paige, 585); the only qualification being that he cannot discontinue without the payment of costs. There was no question of costs in this matter. Mrs. Christy filed a petition before the surrogate

that the defendant account, upon which an order was entered and a citation issued which was returnable on the 28th of October, 1867. Before the return day of the citation, Mrs. Christy served a notice, in writing, upon the surrogate, that the proceeding was discontinued, which notice was placed on file in the surrogate's office, and upon the same day, the 27th of October, 1867, the complaint in this action was served upon the defendant, requiring him to account in an action in this court. On the return day of the citation, the 28th of October, 1867, the day after the service of the complaint in this action upon the defendant, he appeared before the surrogate, and filed his account, and two days afterwards, 30th October, 1867, he filed a petition before the surrogate, for Mrs. C. to show cause why she should not examine his account, and why he should not be discharged. No proceeding, therefore, appears to have been taken upon the petition filed by her. The auditor, who was a clerk in the surrogate's office, swears that the accounting that afterwards took place was upon the defendant's petition, so that Mrs. Christy's proceeding must be regarded as having been discontinued by the filing of the written notice which she gave in the surrogate's office, and there is no ground for the assumption that the subsequent accounting was in continuation of the proceeding commenced by her. The defendant simply filed his account, as an administrator or executor may do, and it appears that on the 12th of December, 1867, Mr. C. Bainbridge Smith, the attorney for the plaintiff in the present action, filed objections to that account. The petition filed by the defendant on the 30th of October, 1867, was for a final accounting and discharge. The citation served upon it would seem to have been returnable on the 20th of December, 1867, for on that day the defendant appeared before the surrogate, and also W. R. Nicholls, Esq., who filed written objections by Mrs. Christy to the surrogate proceeding to a final accounting, upon the ground that an action was then pending in this court to compel the defendant to account; that the defendant had appeared in the action by attorney, and that that action was pending when the defendant presented and filed his petition before the surrogate for a final accounting, which was filed with an affidavit of C. Bain-

Harrington v. Libby.

bridge Smith, Esq., Mrs. C.'s attorney, setting forth when the action in this court was commenced, when the complaint was served upon the defendant, the nature of the action, and that the defendant had appeared in it. Neither the defendant nor Surrogate Tucker paid any attention to this objection. The final accounting was subsequently proceeded with, *ex parte*, an auditor was appointed by the surrogate, who found that, of the $27,517 58 received by the defendant, he was required to pay over on the final settlement to the administratrix but $3,496 19, which was crediting him with $24,021 39, a result in extraordinary contrast with the referee's report in the present action, who finds that the defendant owes the estate $30,854 46. The report of the auditor, it would seem, was confirmed by the surrogate, and it is this proceeding which the defendant sets up as a bar to this action. In other words, the defendant claimed, upon the trial, that a proceeding instituted in the surrogate's court, for a final accounting after the action for an accounting in this court had been brought and was pending, was a bar to any further proceeding in the action here. It was decided, upon a previous appeal to the general term, that this court has jurisdiction in an action to compel a collector or special administrator to account, and I am at a loss to understand how it loses jurisdiction by the filing of a petition afterwards by the defendant in the surrogate's court for a final accounting. There is nothing in the statutes relating to the surrogate's court, that warrants any such construction. The statute simply provides for a mode of compelling an accounting before the surrogate, but it does not make it obligatory that that mode should be pursued, and no other. It does not take away, either by express words or by implication, the power of this or of other courts, having equitable jurisdiction, to give this equitable relief, and this court, being clothed with general equitable jurisdiction, may afford, in cases that require it, a more ample and complete remedy than could be had by an accounting in the surrogate's court. It certainly was not the design of the statute, that there should be two accountings, and if there were an account pending in the surrogate's court when this action was commenced, we should undoubtedly refuse to entertain the action upon the ground that

the parties were already before a tribunal which had jurisdiction, and could compel a full and complete accounting, for if there are two actions or proceedings between the same parties for the same cause, the action or proceeding first commenced is a bar to the second; the rule being that if full relief can be had in the one action or proceeding, no others shall be allowed (*Groshon* v. *Lyon*, 16 Barb. 461 ; *McCarthy* v. *Peake*, 9 Abb. Pr. 164).

Not only comity, but public policy, as was said by Chancellor Walworth, in *Mead* v. *Merritt* (2 Paige, 406), requires that courts should refrain from exercising their powers under such circumstances, that they may not be brought into collision with each other, and the right of suitors lost sight of in a useless struggle for what might be considered their legitimate powers and rights, and which he practically carried out in another case, where it appeared that the subject-matter in controversy was already before the United States Circuit Court of this district (*Mitchell* v. *Bunch*, 2 Paige, 620).

But it is a very different matter to ask this court, in an action brought in it to compel an accounting on the part of a collector, to refuse to proceed in the action, because the defendant, after the action was commenced, and after the complaint had been served upon him, went and filed his account in the office of the surrogate, and followed it up by filing a petition with the surrogate that the plaintiff, in this action, should show cause before the surrogate why she should not examine the defendant's accounts, and why he should not be discharged, and because the surrogate, upon the return of the citation, although duly notified that a suit for an accounting was pending in this court when the defendant filed his petition, nevertheless carried it on to a final adjustment and confirmation of the account, against the administratrix's objection, and when she was not present, she having refused to appear in that proceeding, and abandon the suit she had initiated in this court. The administratrix may have had very good reasons to desire that the accounting should not be before this particular surrogate. The defendant claimed to be allowed $24,121 39, and testified, upon the reference in this case, that he had not disbursed nor paid a dollar of this large amount, except upon the advice and consent of Surrogate Tucker, who

appointed him, and by an order for an allowance made by Geo. C. Barnard (then a judge of the Supreme Court). The plaintiff, who knew nothing of this collector (for the defendant testified that he did not know, and had never seen Mrs. Christie), may have been unwilling to proceed before a surrogate who had thus been confidentially consulted respecting the disbursement and payment of this large amount of money, for it does not appear that any of these payments were made upon applications to the surrogate, in which the administratrix, or her counsel, were notified or heard, so as to give to the consent or approval of the surrogate the effect of an official act. Another tribunal was open to her, and, as she had a right to do, she availed herself of it, and it is certainly a very curious proceeding that the defendant, after the action in this court was brought against him, should apply to the surrogate for an accounting and a discharge, and that the surrogate, with full knowledge of the pendency of this action, should go on against the administratrix's objection, and in her absence, to a final accounting, which, upon the payment of the $3,496 19 found by that accounting to be due to the estate, would, if the proceedings were regular and valid, entitle the defendant to his discharge. Judge Ingraham held in *McCarthy* v. *Peake* (9 Abb. Pr. R. 164), that the court which first acquires jurisdiction should dispose of the whole matter, and that any other court, in which subsequent proceedings are taken for the same purpose, should, as well from feelings of amity as from a desire to avoid a conflict of jurisdiction, restrain the further prosecution of the matter in that court.

It has been repeatedly held that it is a complete answer to an action, and may be pleaded in abatement to it, that there is another action depending for the same cause (*Wentworth* v. *Barnum*, 10 Johns. 248; *Platt* v. *Platt*, Col. & Cai. Cases, 42; *Embree* v. *Hanna*, 5 Johns. 101; *Bendernagle* v. *Cocks*, 19 Wend. 207; *Ogden* v. *Bodle*, 2 Duer, 611; *Dickenson* v. *Codwise*, 4 Edw. Ch. 341; *Dawley* v. *Brown*, 65 Barb. 107), and in an action for an accounting, like this, the pendency of a former action may be pleaded in abatement, although the plaintiff in the second suit asks extended relief (*Ward* v. *Gore*, 37 How. 119). The written objections filed by the counsel for the administra-

trix upon the return day of the citation issued upon the defend-
ant's petition for a final accounting and discharge, was equiva-
lent, in its effects in such a proceeding, to a plea of abatement in
an action. Yet Surrogate Tucker took no notice of it. He
neither considered it, nor made any decision upon it; but the
accounting was carried on as if it were an ordinary proceeding,
and the surrogate's clerk, Mr. Aitken, who was appointed the
auditor to examine and report upon the defendant's account, re-
garded it, as would seem from his evidence, as an ordinary pro-
ceeding, in which the parties in interest had appeared.

Whatever effect, if any, could attach to such a proceeding
under such circumstances, it could have no effect upon the
prosecution of this action, and in no way constituted a bar to it.

After the accounting in this action had been ordered by the
interlocutory judgment, and whilst the reference under it was
pending, the administratrix died; upon which the surrogate
appointed the present plaintiff administrator, and the suit was
revived in his name. If the surrogate, under the statute which
defines his powers and the mode of their exercise, had no juris-
diction to make this appointment, it was not a matter which the
referee could decide. The statute, in relation to proceedings
in the surrogate's court of the county of New York (Laws of
1870, p. 826, § 1), declares that the objection of want of juris-
diction shall not be taken to the orders or decrees of the surro-
gate, except by appeal in the manner prescribed by statute, or
in a proceeding before the surrogate to set aside, open, modify,
or vacate the orders or decrees.

This is the only way, therefore, in this State, in which the
objection of the want of jurisdiction can be raised and passed
upon. Since the passage of this statute it is not competent for
this court or its referee to disregard the order of the surrogate
of this county appointing an administrator, upon the ground of
want of jurisdiction (*Field* v. *Van Cott*, 5 Daly, 308).

Judge Barrett held that the administratrix was entitled to
all moneys, property and effects which had come into the de-
fendant's possession as collector, except such money as he may
have paid, laid out and expended in good faith in collecting,
preserving and protecting the property, together with his com-
missions.

Harrington v. Libby.

The defendant, as collector of the estate of Edwin P. Christy, before the appointment of the administratrix, received personal estate of the intestate of the appraised value of $24,140 40, all of which, with the exception of one item, he converted into money, for which, with sums subsequently received, the referee finds he is chargeable, amounting to $27,517 58. He has paid into court $3,510 07, and the difference, amounting to about $24,000, he claimed to be allowed.

The referee allowed him upon this claim $3,908 68, and his commissions on $23,608 90, amounting to $336 09, and charged him with $11,077 84, interest upon $23,272 81, and allowing him the amount paid in, with the accumulated interest, $3,469 19, the referee found the amount due by him to the estate to be $30,854 46.

The defendant objects to the allowance of interest. A special administrator or collector, who has money in his hands, which he is to keep until it is finally determined to whom the custody of the personal estate is to be intrusted, as administrator or executor, should, like a guardian or trustee, invest it, where the circumstances are such that it ought to be invested and made productive, and is justly chargeable with interest on the funds in his hands which ought to have been, but have not been so invested (*De Peyster* v. *Clarkson*, 2 Wend. 77; Id. Hopkins, 424; *Hasler* v. *Hasler*, 1 Bradford, 248). A collector, as a general rule, is not to invest the moneys in his hands, because his appointment is temporary, being at an end when letters testamentary or of administration are granted (*Baskin* v. *Baskin*, 4 Lans. 90). But like every general rule, it may be qualified by the circumstances of the particular case. He should not loan upon time, nor upon personal security (Hill on Trustees, 579, note 1, 4th Am. ed.), as he may be held amenable in the event of loss; but in a case like this, where a large sum of money, $27,000, comes into his hands, he should deposit it in one of those trust companies where funds paid into court are deposited, from where it can be taken at any time, and where, whilst it remains on deposit, it draws interest. The defendant, by allowing a large amount of money to remain in his hands, instead of keeping it on deposit in a trust company, where it

would have been productive, should, I think, be answerable to the extent to which interest would have been allowed upon it if he had so deposited it (*Hasler* v. *Hasler*, 1 Bradford, 248). He was entitled to keep some portion of the money in his hands to defray the ordinary expenses incidental to his trust, and where, in doing so, he has acted in good faith, he would not be held to very great strictness as to what that amount should be. I am wholly unable, from the referee's report or from the evidence, to see upon what ground the defendant is charged with $11,077 84 interest. Nothing is stated about interest in the report; but in the schedule or *resume* attached he is charged with $27,517 58, which, after deducting the credits, $3,908 68, and the commissions, $336 09, which together amount to $4,244 77, leaves a balance of $23,272 81, upon which interest is charged, amounting to $11,077 84, and he is then credited with the amount paid into court and the accumulated interest thereon, by which a balance is struck as due to the plaintiff of $30,854 46. Interest appears to be charged upon the whole amount received, less the amount paid out and commissions, which does not recognize his right to keep a dollar of the funds in his hands from the day he received them, which is unreasonable, onerous, and holding him responsible for interest at the rate of seven per cent., an amount which could be obtained only by a permanent investment, and that he had no right to make.

The referee charged the defendant with certain bonds amounting to $3,000, of which he had given no account, and disallowed two items in his account, $611 78 and $101 26, and, it would appear, was correct in so doing. He allowed him $2,662 for the household furniture charged in his account, as it never came into his possession ; $70 42, a difference of interest erroneously charged in his inventory; $525 32 for another difference of interest erroneously charged in the inventory ; $50 90, also erroneously charged in the same way ; and $600 for bonds to which he was entitled. He also allowed him $1,170 for fees paid to his lawyer, Van Loon, and to the surrogate, and for money paid to one McTeath for watching certain property.

He disallowed $12,669 24, as I make out the account of the

items, which is charged in the defendant's accounts under the general head of disbursements, for moneys paid, laid out and expended. This large amount, which was disallowed, is made up of $8,991 72, paid to lawyers; $2,329 40, to J. W. Bell, for printing; $10 to a clerk for serving subpœnas; and $1,338 02, paid to the surrogate by the order of the board of supervisors.

The items of this large amount were disallowed, not upon the ground that they were wrongfully paid by him as collector, but because the referee felt himself restricted by the words of the decree to the allowance only of moneys laid out and expended in good faith, in collecting, preserving and protecting the property, and no one of these payments or expenditures came literally within this restriction. I do not suppose that Judge Barrett meant by the use of these words to deprive the defendant of any allowance, where the payment or expenditure was rightfully made, that is where it was one which would be equitably and justly allowed to a collector by a court of equity in the settlement of his accounts; or if he did, the general term may, upon the appeal from the judgment entered upon the referee's report, which is the final decree or judgment, review and correct any error or mistake in the interlocutory judgment in this respect, if it is connected with and essential to the rendering of a proper final judgment in· the case (*Atkinson* v. *Manks*, 1 Cow. 691; *Le Guen* v. *Gouverneur*, 1 Johns. Cases, 499; *Kane* v. *Whittick*, 8 Wend. 235; *Bank of Orange* v. *Fink*, 7 Paige, 87; *Cowles* v. *Cowles*, 9 How. Pr. 361; *Humphrey* v. *Chamberlain*, 11 N. Y. 274, 276; Van Sant Eq. P. 657, 658, 665, 666; 1 Barb. Ch. Pr. 2d ed. 386, 387, and *note* 9). An exception was taken to the decision of the judge referring the matters to a referee, and directing the defendant to account before him. This was not an exception to the limitation imposed upon the accounting by the words of the interlocutory decree, but an exception generally to a reference and an accounting, so that the effect of the decree in so limiting it, if it had that effect, did not come under review upon the appeal from the interlocutory order, as no exception was taken raising it. We are not embarrassed therefore by any previous decision on that point in the general term, and are free to hold, from

the nature of the action, the issues raised by the answer to the complaint, the findings of the judge upon the facts and upon the law, what was the nature of the accounting to which the plaintiff was entitled, and the defendant was bound to make before the referee. The referee is not to be blamed for giving the construction which he did to the words used in that part of the interlocutory judgment ordering an accounting; for from the peculiar phraseology used, it was probably more advisable on his part to leave it to the court upon this review of the judgment entered upon his report, to correct any error or mistake in directing the mode of accounting. The matter litigated under the pleadings before Judge Barrett, were not what credits the defendant was entitled to, but whether the proceedings before the surrogate were a bar to this action. The defendant's account embracing the inventory of the property he had received, and the charges and disbursements against it, was in evidence only as an admission of what he had received, and as a part of the proceedings before the surrogate, and there was nothing in the evidence relating to any particular item or raising the question as to what credits the defendant was or was not entitled to. The judgment was that this action for an accounting was well brought; that the proceedings before the surrogate did not constitute an accounting, and were no bar to the action; and that the defendant should account before the referee for the property and effects of the estate which had come into his hands as collector or special administrator, and which accounting necessarily implied the allowance of all proper credits for sums rightfully paid, or money properly expended, and what credits should or should not be allowed, necessarily depended upon such evidence as was given before the referee in respect to each item which the defendant claimed to have allowed to him. Under the views of the referee, as indicated by his finding, a large amount, to which otherwise the defendant might be entitled as a payment or proper expenditure made, was cut off in consequence of the limitation which the referee assumed was imposed in the accounting. The question therefore arises, whether the defendant should have been allowed for the payments and disbursements which were excluded, to the extent of $12,669 84.

Of this amount, the defendant paid $8,991 72 for lawyers' fees. $800 of this amount was paid to Hull & Childs, lawyers, employed by him, after the decease of the lawyer he had previously employed, Van Loon, though for what particular services, unless it was appearing for him in the proceedings before the surrogate, under the accounting carried on after the administratrix had served a notice that she discontinued that proceeding, was not shown. This $800, therefore, so far as we can infer, was not for services with which the estate should be charged, and was, therefore, properly disallowed (*Burtis* v. *Dodge*, 1 Barb. Ch. 77; *Wilcox* v. *Smith*, 26 Barb. 316; *Ray* v. *Van Hook*, 9 How. Pr. 427; *Isenhart* v. *Brown*, 2 Edw. Ch. 341). $8,191 72 of this amount was, however, paid by the defendant to the administratrix's lawyers for their services in proceedings in the surrogate's court, or in the Supreme Court, which resulted in a judgment in the latter court, finally establishing Mrs. Christie's right to the administration. It was paid under an order of Justice Geo. E. Barnard, upon a motion in the Supreme Court, by the administratrix's lawyers, for an allowance for their services, and which motion was resisted by the late Judge Bradford, as counsel for the respondents in the appellate proceedings. The motion was not only granted by Justice Barnard, but he ordered the defendant, as collector, to pay the amounts thus allowed, to the lawyers, whom he declared to be entitled to it, out of the moneys in the defendant's hands, and this large amount was paid by the defendant, as he claimed, in obedience to the order served upon him.

When the final decision was made, by which it was held that the administratrix was entitled to the administration, does not distinctly appear. It is alleged in the complaint that the contest was finally decided in December, 1866, and that the final decree was entered in the Supreme Court on the 12th day of January, 1867.

The order made by Justice Barnard for the allowances was made previously, on the 12th of May, 1866, and probably after some opinion or order indicating or declaring the final decision of the court, which is inferable from the testimony of J. Kepler Smith, that it was his impression that the decision was made in

April, 1866. If made before the final decision, then, according to a decision of the general term of the same court, *In the Matter of Parish* (29 Barb. 627), as an order for the payment of allowances out of the funds in the hands of the collector, it was improper, it being held, in that case, that the contestants, either for or against a will, have no claim to be paid out of the estate, until the final decision is made, so as to take the property out of the hands of the special collector. It may be, however, for all that it appears in this case, that the final decision had, in fact, been made, although not formally entered up as a final decree or judgment, and, unless the facts were before it, it would be impossible for this court to say whether these allowances were properly made or not. All inquiry on that head, before the referee, was practically cut off under his view of the limitation in the decree for the accounting, and the effect of his judgment is that this large sum of money, $8,191 72, paid by the defendant, under this order, to the lawyers of the administratrix, is imposed upon him as an amount due by him to the estate, which, by the accounting, he is required to pay over, or a judgment will be entered against him for that sum, with such other amounts as may be due by him.

The order of Justice Barnard allowed the following sums to the administratrix's lawyers: Samuel Jones, $3,191 72; J. Kessler Smith, $2,500; B. J. Blankman, $2,500, and to the respondents on the appeals, he allowed to A. W. Bradford, $2,500; Thomas E. Stewart, $1,000, and to Paris G. Clarke, $1,000. Neither Bradford, Stewart nor Clarke availed themselves of this allowance, but the three lawyers of the administratrix, Jones, Smith and Blankman, did, and to them the defendant paid $8,191 72, as directed by the order, and produced their receipts in acknowledgment thereof, upon the accounting. This order of Justice Barnard would seem to have been an extraordinary one, for by it he disposed of more than half of the personal estate of the intestate, in allowances to the lawyers engaged in the contest, in which the administratrix ultimately prevailed. To my mind it appears to have been an erroneous allowance for professional services in such a case, but I am perhaps influenced by the circumstance that I know more about

Harrington v. Libby.

that case than appears in the present action, as the proceedings relating to Christy's estate were carried on before and partially heard by me, while acting temporarily as surrogate upon the death of Surrogate West, and because the matter has been before me in other forms in this court.   This, together with the fact that some, at least, of the lawyers to whom these large sums were paid, were of little professional standing and of very limited legal ability, has left a most unfavorable impression upon my mind of the allowance of this large sum of money by a judge whose judicial conduct was then a matter of great public complaint, and who was subsequently impeached and removed from office.   There is, however, nothing in the evidence in this case to warrant the conclusion that the defendant was in any way accessory to the procuring of this order of allowance, or that he did anything except to comply with the order and pay the money.   All that appears in the case, is that he paid the money in compliance with an order directing him to do so, by a judge of the Supreme Court.   He may have paid it in entire good faith.   If he did so, and there is nothing in the case to warrant any conclusion to the contrary, the question arises whether he is entitled to have it credited, or whether it is to be imposed upon him as a pecuniary loss.   I am not prepared to hold that such is and must be the effect of this disbursement of this large sum.   It has gone into the hands of the lawyers of the administratrix for their services, in a litigation by which her right to the administration was established; services which either had to be paid for personally by her, or out of the estate which came into her hands.

As this report will have to be set aside, in my judgment, under any circumstances, the settlement connected with these payments may be more fully inquired into upon another hearing, and it can then be decided whether this is to be credited' on the defendant's account or not.   That question has not been passed upon by the referee, as he disallowed it, not because it was a payment which was unjustifiable and without authority, but because it was not made in collecting, preserving or protecting the property.   Upon another hearing, more full and satisfactory evidence may be given of everything connected with

this allowance and the payment of it, and the legal question in-volved can then be disposed of upon the facts.

The next item disallowed is $2,339 40, paid by the defendant to J. Bell, for printing. It does not appear distinctly in the case, but the inference is that it was paid for printing the papers used in the surrogate's court and in the Supreme Court, in the litigation referred to. To me it appears to be an erroneous charge for the printing requisite or used in such a proceeding. But we have nothing before us upon this appeal to show what the nature of that litigation was. It appears to have extended over a period of nearly four years, involving a question whether the intestate did or did not leave a will, and in which the letters originally granted by the surrogate to the administratrix, Mrs. Christy, were revoked in the surrogate's court, and upon appeal to the Supreme Court the surrogate's decision was reversed and the administration restored to Mrs. Christy. The testimony may have been very voluminous, and there may have been a great many papers and documents that had to be printed, so as to necessitate even so large an outlay for printing as the amount paid by the defendant. It may, moreover, have been a very heavy litigation, demanding a great deal of time and labor on the part of the counsel employed, as well as a large amount of printing, so that for all that this court knows judicially, the large allowance made to the lawyers may have been no more than an adequate compensation, and the large sum paid to Bell may have been for printing that was indispensable. If such were the fact, it may be shown, at least, in a general way, upon the rehearing.

There is an item of $1,338 02, charged in the defendant's account as cash paid to the surrogate by the order of the board of supervisors, on June 2, 1865, but there is nothing in the case to show how, or in what way this is a charge upon the estate. If nothing more than this is shown respecting it upon the rehearing, it cannot be allowed. The charge of $10 for the service of subpœnas is a small matter. If chargeable, it must be shown in what way it was incurred.

The Supreme Court, in the proceedings before it upon appeal, had authority, when the final decision was given in favor of the

administratrix, to order that the costs, expenses and reasonable counsel fees incurred by her in the litigation, should be paid out of the estate (*Young* v. *Brush*, 28 N. Y. 667 ; *Frith* v. *Campbell*, 53 Barb. 325 ; *Bradford* v. *Boudinot*, 3 Wash. C. C. 122 ; Laws of 1858, ch. 314, § 3), and the personal estate being in the hands of a collector, it was in the power of the court to direct how to pay it, and if he has, in good faith, paid it under the order of the court, it is a matter of course to allow it in the accounting (*Collins* v. *Hoxie*, 9 Paige, 86, 87 ; *Hosack Rogers*, Id. 463 ; *The Att'y Gen.* v. *The Mayor of Norwich*, 2 M. & C. R. 406, 424 ; *Worrell* v. *Harford*, 8 Ves. 8). In respect to the other disbursements and payments for expenses incurred in that litigation, their allowance will depend upon whether they were made in good faith, and were such as it may be assumed the court would order to be paid out of the estate ; and this may be applied to all other payments or disbursements which the defendant seeks to be allowed. If the defendant, without the order or authority of the court, made payments or disbursed moneys which ought not be charged upon the estate, it is not for him to complain, as he could, in every instance, have taken the direction of the court, and if he chose to act upon his own responsibility, he does so at the peril of being held accountable, if the payment or disbursement is one that ought not to be charged upon the estate.

As there must be another accounting in the matter, and as the reversal of the judgment puts an end to the reference and will require the appointment of a new referee, I think it should be referred to a referee who has had a good deal of practical experience of the mode of accounting in equity. Not that I wish to find any fault with the capable and very competent referee who has heretofore acted, and who, as I have said, had a right to consider himself limited by the peculiar wording of the interlocutory decree ; but because it will, I am certain, greatly facilitate and lessen the future labor of the court, to have the whole matter of the accounting gone over again by a referee like Judge Mitchell or Judge Ingraham, or Mr. Bloomfield or Mr. Prichard, where we can have the benefit of a large practical experience, in an investigation which will be delicate, and

require a great deal of discrimination as well as knowledge of the methods, rules and principles that apply to such a proceeding in equity. The judgment upon the report of the referee should be reversed, and an order settled by one of the judges of the general term before whom that appeal was heard, as to the future mode of proceeding.