CATTARAUGUS COUNTY.—HON. ALFRED SPRING, SURROGATE.—July, 1886.

## MATTER OF WOODWORTH.

*In the matter of the estate of* LOTTIE M. WOODWORTH, *deceased.*

Code Civ. Pro., §§ 1832, 1833 and 1834, relating to the mode of impeaching or contradicting an inventory, were not intended to operate upon an accounting where a trustee's management of his trust is on trial.

A Surrogate's court cannot determine the right of inheritance of heirs at law, in a contested proceeding; nor is the division of real property or

its avails within the compass of its jurisdiction, except where such property is sold pursuant to its decree under the statute.

Proceeds of a sale of an infant's land, made in his lifetime, are real property, and descend to his heirs, where he dies intestate during minority.

Decedent died an infant, intestate, leaving, her surviving, a mother and three sisters. During her lifetime, certain land of which she was seized was sold in proceedings instituted for that purpose, and the proceeds of sale were paid to the county treasurer. After her death, her administrator, assuming the money to be personal property, obtained an order directing it to be paid to him, included the amount in his inventory, paid the bulk thereof to decedent's mother, and, after the death of the latter, paid thereout $50 on account of her funeral expenses. Upon the judicial settlement of the administrator's account, on objection by the surviving next of kin,—

*Held*, that the money in question was real property, and retained its character as such notwithstanding the acts of the administrator in respect thereto, and that the court had no jurisdiction to determine the rights of inheritance thereof.

HEARING of objections to account of administrator of decedent's estate, interposed in proceedings for judicial settlement.

E. E. & G. W. HARDING, *for administrator.*

C. D. VAN AERNAM, *for objector.*

THE SURROGATE.—The petitioner in this proceeding was appointed administrator of intestate in the year 1870. At the time of her death, she was a minor, leaving her surviving no child, husband or father, but a mother and three sisters. The mother has since died.

Some time prior to the death of the intestate, certain real estate of which she was seized, and which was situated in Wyoming county, was sold in proceedings had therefor, and the proceeds of sale, amounting to over $600, were paid to the treasurer of that county, pursuant to the order of the county judge.

After her death the administrator, supposing this money was personal property, of which he was the proper custodian, obtained an order from the county judge, directing the treasurer to pay it to him, the administrator, which was accordingly done. Five hundred and fifty dollars of this were subsequently paid to the mother of decedent by the administrator, and later $50 were paid to liquidate the funeral expenses of the mother, upon her death. These payments are objected to by the contestant, and the main controversy now arises, as to the character of this money so paid by the administrator, and, if " impressed with real uses " when received by him, what effect his action has, in inventorying and treating it as personal property.

If the purchase price of this real estate was the same as the land itself, the statute of descent would compel a partition or division of the fund among the heirs at law, and it would go to the mother for life, and upon her decease to the sisters (R. S., part 2, ch. 2, § 6 ; Wheeler v. Clutterbuck, 52 *N. Y.*, 67-72). In that event, the mother, by virtue of her life interest therein, would be entitled to the possession of this money, and the payments made to her by the administrator would be valid. At least, he could not be made to account for this money *as administrator*, for in that capacity he is only chargeable with the personal effects of deceased (Shumway v. Cooper, 16 *Barb.*, 556).

If, however, this money was personal property, it would be distributed to the mother and the sisters equally, according to the statute of distribution (R.

S., part 2, ch. 6, tit. 3, § 90. And in that case, the payments made to the mother would be excessive, and the administrator would be liable to the amount of such over payments (Adair v. Brimmer, 74 *N. Y.*, 539, 558). So that it is essential to a proper disposition of this matter, to determine whether this money was descendible to the heirs at law, like real estate, or distributable to the next of kin, as personal property.

It is a general proposition, well sustained by authority, that the proceeds of the sale of an infant's lands are deemed and treated as real estate, and descend to his heirs at law, in case of his death intestate during his minority (Forman v. Marsh, 1 *Kern.*, 544; Matter of Price, 67 *N. Y.*, 231; Horton v. McCoy, 47 *N. Y.*, 21; Sweezy v. Thayer, 1 *Duer*, 286). This is necessary, to preserve intact the right of inheritance, as the statutes of descent and distribution are not the same. But in this case, the counsel for the contestant claims that, inasmuch as the administrator received this money on the hypothesis that it was personal estate, and inventoried it as such, and incorporated it in his account, he is now estopped from asserting the money to be real property, and that he cannot rebut and impeach his inventory. Sections 1832, 1833 and 1834 of the Code of Civil Procedure are re-enactments of long existing statutes, and, while they specify in what particulars an inventory can be rebutted or explained, also provide that the prohibition does not infringe upon any rule of evidence which the administrator was otherwise permitted to invoke, nor were these statutes designed to operate upon an accounting where the trustee's management of his

trust is upon trial (Thorne v. Underhill, 1 *Dem.*, 306, 313; Redf. Surr. Prac., 711; McClellan Surr. Prac., 601).

The administrator makes his inventory soon after assuming the trust, and when ordinarily he is only slightly familiar with the estate of his intestate, and if he inadvertently causes property to be appraised which belongs to other parties, he should not be chargeable therewith. The obligation he assumes is to manage the property of the decedent, and when he has done that as the law directs, his duties to the next of kin end. Nor does the doctrine of estoppel apply to this case in favor of contestant. This money was paid to Mr. Randall with the knowledge of the next of kin, and they knew of these payments made to the mother, and did not interfere to prevent the administrator making them. But beyond all this, the bare fact that the administrator has seen fit to designate this money as personal property does not in truth alter its character. If that is so, then by that act the mother's right to the use of this property would be effectually cut off, for an estoppel is nothing unless reciprocal in its effect and operation (Clute v. Jones, 28 *N. Y.*, 284). The administrator in this case has given the usual bond, for what? To ensure to the next of kin a faithful performance of the trust committed to him—to-wit the management of the personal effects of the intestate as the statutes provide. The sureties guarantee to them a strict compliance with the terms of this bond, but their liability cannot be extended beyond its terms (People v. Pennock, 60 *N. Y.*, 421; Miller v. Stewart, 9 *Wheaton*, 680).

Again the Surrogate's court can have no jurisdiction to determine the rights of these parties to this money. That court is one of limited jurisdiction, and its powers and limitations are prescribed and defined by statute (Code Civ. Pro., § 2472; Bevan v. Cooper, 72 *N. Y.*, 317, 327). It cannot determine the right of inheritance of heirs at law to real estate in a contested proceeding; nor are the division and partition of real estate, or its avails, within the compass of the Surrogate's jurisdiction, except by proceedings to pay the debts of decedent. The mere *ipse dixit* of an administrator, characterizing as personal property that which the law designates as real estate, does not in fact alter its character, so as to vest the Surrogate with jurisdiction. The jurisdiction of a court is not so pliable and elastic that it can be enlarged or restricted to suit the caprice of every suitor. The contestant must seek redress in another court for the proceeds of this real estate.

The administrator, in addition to the avails of this land, received, in 1870, $202.97. He expended a few dollars of this, and the residue he has kept for a small portion of the time in bank, in his own name, but, for the greater part of this long time, he has had it stowed away in his bureau drawer. He testifies this could have been invested with reasonable diligence; and it was incumbent upon him to do so (Shuttleworth v. Winter, 55 *N. Y.*, 624, 631; Hasler v. Hasler, 1 *Bradf.*, 248).