---

(32 Misc. Rep. 182.)

## In re SUDDS.

### In re READ'S ESTATE.

#### (Surrogate's Court, St. Lawrence County. July, 1900.)

1. EXECUTORS AND ADMINISTRATORS—FUNDS IN BANK—INTEREST.

The fact that an administrator allowed funds of the estate, which he might have distributed among the legatees, to lie in a bank, of which he was the cashier and a director, at 2 per cent. interest, was not ground for charging him with legal interest.

2. SAME—TAXES—PAYMENT BY ADMINISTRATOR.

Laws 1896, c. 908, § 32, declares that if a person holds taxable property, as executor or administrator, he shall be assessed therefor as such, with the addition to his name of his representative capacity. Held, that where an assessment read, "R., J. C., Est., H. S., Administrator. Personal, $———." the taxes were not illegal, in that the assessment did not comply with the statute, since "R., J. C., Est.," might be regarded as surplusage, and the representative character of the executor was sufficiently described, and hence the executor should not be charged with the amount of such taxes paid by him.

3. SAME—TAXES—ILLEGALITY—PAYMENT BY EXECUTOR—CHARGING EXECUTOR.

Under Laws 1898, c. 310, declaring that an assessment of property previously made should not be deemed invalid, because property was as-sessed to the "estate" of a decedent, instead of to his personal representa-tives, an executor should not be charged with taxes paid by him, which prior to the passage of the act were assessed to the estate of his decedent.

4. SAME—FAILURE TO DISTRIBUTE FUNDS—TAXATION OF FUNDS—CHARGING EX-ECUTOR.

The fact that an executor retained in his hands during his administra-tion funds that he might have distributed among the legatees was not ground for charging him with taxes paid by him on such funds, since it is presumed the funds would have been assessed to the legatees if in their hands.

5. SAME—TRANSFER TAX—FAILURE TO HAVE ASSESSMENT—CHARGING EXECU-TOR.

Where testator died October 10, 1896, and letters testamentary were issued February 3, 1897, and the transfer tax on the estate was assessed May 27, 1897, the executor should not be charged with the amount of the transfer tax, on the ground that he should have the tax assessed and paid within six months after the death of the testator, where there was no testimony to show that it was possible for the executor to have the tax

assessed and paid within 2 months after his letters of administration were issued.

Proceedings for settlement of the account of Henry Sudds, as executor of the estate of James C. Read, deceased. Account settled.

E. H. Neary, for executor.

V. P. Abbott, for G. O. Miller, and in person, as assignee of G. O. Miller and others.

G. S. Conger, as special guardian for Howard E. Read, and for Mary A. Sunderland and others.

HERRIMAN, S. The testator, James C. Read, died in October, 1896, leaving a will, which was admitted to probate January 25, 1897, and upon which letters testamentary were issued to Henry Sudds, February 3, 1897. The will gives the following legacies: (1) To the testator's sister, Sarah Ayres, $3,000; (2) to Sarah Gifford, $1,000 and certain household furniture; (3) to Minnie Gifford, $1,000; (4) to Ida Gifford, $1,000; (5) to Alden Gifford, $1,000; (6) to the executor, in trust for Jessie Ormeston and Robert Ormeston, $1,000, with discretion to pay the principal sum to them; (7) to George S. Miller, $500 and certain household furniture; (8) to Lyman W. Miller, $2,000 and certain household furniture; (9) to Sarah Euphrasia Miller, $1,000 and certain household furniture; (10) to Sarah I. Miller, $200; (11) to George Miller, $200; (12) to Nellie Miller, $200; (13) to Samuel Miller, $200; (14) to Homer Miller, $200; (15) to Jarvis M. Flint, $200; (16) to Croguse S. Flint, $200; (17) to Orin Smith, $1,000; (18) to the First Baptist Society of Gouverneur, $4,000. By the nineteenth clause of the will the testator directed that, in case his estate should not amount to the sum of the aggregate legacies, such legacies, except the legacy to the Baptist Society, should be proportionately reduced, and that, in case his estate should exceed such aggregate, the surplus should be divided equally, share and share alike, between the legatees, except the Baptist Society. By the twentieth clause of the will he directed his executor to settle the estate and pay and discharge the several legacies within three years after the testator's decease and burial. By the last clause of the will Henry Sudds is appointed executor, and authorized to sell and convey any real estate of which the testator should die seised. On March 15, 1897, an inventory of the personal estate was filed, showing assets amounting to the sum of $50,703.76. The executor converted a considerable part of the estate into money during the first year of his executorship, paid the debts, funeral expenses, taxes, expenses of probate, etc., and between the 10th day of February and the 24th day of June, 1898, he distributed money to the legatees to the amount of $10,902.46. After making this distribution there remained in the hands of the executor the sum of $14,000, which had been deposited by him in the Bank of Gouverneur, and for which he had taken certificates of deposit running to himself as executor, and drawing 2 per cent. interest. During the year 1898 the estate was further reduced to money, and between the 13th of January and the 7th day of February, 1899, the executor distributed to the legatees $15,558.16. After making this last distribution, there

remained in the hands of the executor $2,511.11, in the form of a cash credit to him upon the books of said bank, and $6,000 in certificates of deposit drawing 2 per cent. interest. Now, at the end of the third year of his executorship, he asks that his accounts be finally settled, and the balance of the estate remaining in his hands distributed to the beneficiaries.

Mr. Sudds, during the entire period covered by his executorship, has been the cashier and one of the directors and stockholders of said Bank of Gouverneur, and the principal objection now raised by the legatees to the settlement of his account is by reason of his having allowed the funds of the estate to remain on certificate of deposit in this bank at 2 per cent. interest, the legatees claiming that this was a use of the fund by the executor for his own profit, and that he should therefore be now charged with full legal interest. There is no proof whatever that any complaint was made by the legatees on account of the holding of assets by the executor until such complaints were made in court upon this hearing, or that any demand was made by any legatee for the payment of the whole or any part of his legacy. The claim is not made that the executor should have finally settled the estate at an earlier date, but only that the dividends paid to the legatees should have been large enough to exhaust the funds in the executor's hands applicable to the payments of the legatees. In fact, a litigation instituted by the executor upon a promissory note for $1,500 held by the testator at the time of his death was not concluded until after the original account in this matter was filed. Under the circumstances of the case, the executor ought not, in my judgment, to be charged with more interest than he actually received upon the estate.

The law undoubtedly is that an executor who uses the funds of the estate in his own business, or deposits them in the bank to his own credit and with his individual funds, to increase his credit rating at his bank, or otherwise converts the assets to his own use, is chargeable with legal interest upon the assets so used, and even with a higher rate of interest if it is realized by the executor, but the mere fact that the executor in this case was one of the stockholders of the bank in which the deposit was made is not, in my opinion, sufficient to justify the court in characterizing the deposit as a conversion or improper use of the funds. In Re Babcock's Estate (Sur.) 9 N. Y. Supp. 554, the executor deposited assets of the estate in a bank of which he was a stockholder and the president, where it remained for more than one year. It was held that the executor was chargeable with interest at the rate of only 3 per cent., that being the rate customarily allowed by the bank on time deposits. In Re Scudder's Estate, 21 Misc. Rep. 179, 47 N. Y. Supp. 101, where the acting administrator deposited funds of the estate in a bank of which he was cashier, and which failed within six months from the time the deposit was made, the executor was held chargeable with the loss of the principal and with interest at the rate of 2 per cent., that being the rate received on the fund from the firm with which it had been deposited prior to its deposit in such bank. There is no pretense that any higher rate of interest than 2 per cent. could have been earned by the executor on the funds in

his hands, except by loans on bond and mortgage, or in other forms of more or less permanent investment, which latter the executor was not authorized to make. The most that the executor is chargeable with for allowing funds which could safely be paid to the legatees to remain idle in bank is such interest as is ordinarily paid by savings banks and trust companies, and such interest does not exceed 2 per cent. per annum. In Re Mapes, 5 Dem. Sur. 446, an administrator who kept on deposit $29,000 for a year after the estate was substan-tially closed was charged with interest at the rate of only $1\frac{1}{2}$ per cent. from the expiration of one year after the date of his appointment. In Re Bradley (Sur.) 2 N. Y. Supp. 751, where an administrator im-properly withdrew funds from a trust company where they were earn-ing $2\frac{1}{2}$ per cent. interest, and permitted them to lie idle for about a year, the administrator was charged with interest at the rate of $2\frac{1}{2}$ per cent. per annum. In Hasler v. Hasler, 1 Bradf. Sur. 248, an ad-ministrator having the funds of an estate in cash for six years was charged with legal interest, but this was upon the express ground that his failure to show that the funds were kept intact and ready to be paid over raised a presumption of improper use by him of the funds. In Jacot v. Emmett, 11 Paige, 142, Chancellor Walworth says, at page 145:

"A mere neglect by an administrator to invest moneys which he may be called upon to pay over to the distributees at any moment would be no ground for charging him with interest, if the money was kept in bank or otherwise, ready to be paid over when called for. Indeed, the administrator would not be authorized to loan the fund, to which adult distributees were immediately entitled, at their risk, and without authority from them."

The executor paid the legacy to the Baptist Church Society, March 9, 1898, about 16 months after the death of the testator, together with $80 interest upon the amount of the legacy. This interest was evidently figured from the expiration of one year after the death of the testator. Under the decisions of the court of appeals in the case of Cooke v. Meeker, 36 N. Y. 15, and In re Stanfield, 135 N. Y. 292, 297, 298, 31 N. E. 1013, it seems that interest might have been charged from the death of the testator.

The legatees represented by Mr. Abbott object to the allowance of payments made by the executor for taxes paid during his executor-ship. It is not claimed that the taxes were improper or excessive, but the objection is made that the assessments were illegal, in that they failed to comply with the requirements of section 32 of chapter 908 of the Laws of 1896, known as the "Tax Law." The assessments were for personal property, and were in the following form: "Read, James C., Est., Henry Sudds, Adm. Personal, $————." It seems to me that this form is sufficient compliance with section 32 of the tax law. Without the words "Henry Sudds, Adm.," the assessments would be clearly illegal, but these words sufficiently and correctly name the executor, and describe his representative character, for an executor is an administrator. The word "executor" merely distin-guishes one who is named in a will as the person who administers the estate from one who administers either under the law of intestacy or under the will without being named therein. The words, "Read,

James C. Est.," can be disregarded as surplusage. All assessments against the estate of the decedent made prior to April 19, 1898, were legalized by chapter 310, Laws of that year.

Counsel also asks that the executor be personally charged with the amount of the taxes because of his failure to sooner distribute the estate, and claims that if the estate had been distributed one year after the letters testamentary were granted the legatees would have escaped taxation upon their distributive shares. This is a non sequitur; for it does not appear how the legatees were to avoid taxation, and the presumption is that the property would have been assessed in their hands if it had not been assessed in the hands of the executor.

The legatees also ask that the executor be charged with 5 per cent. upon the amount of the transfer tax paid upon this estate, upon the ground that he should have had the tax assessed and paid within six months after the death of the testator. The testator died October 10, 1896. Letters testamentary were issued February 3, 1897. An appraiser was appointed April 5, 1897, and the tax was assessed May 27, 1897. No testimony whatever is given to show that it was possible for the executor to have the tax assessed and paid within the six months which expired April 10, 1897, only two months after letters testamentary were issued. Let a decree be drawn settling the accounts of the executor as filed, and directing distribution to the legatees, with $100 costs to the executor in this proceeding.

Decreed accordingly.